PEOPLE v GOULD

1. SEARCHES AND SEIZURES—SEARCH WARRANTS—AFFIDAVITS—PROB-
ABLE CAUSE—INFORMANTS—PERSONAL KNOWLEDGE OF AFFIANT.

Affidavits for search warrants should be construed in a common-
sense manner; therefore an affidavit by a police officer partially
based on information received from an informant, even if it
fails to state that the informant was trustworthy, can furnish
the requisite probable cause for the issuance of a search war-
rant where there were sufficient facts based on personal obser-
vation of the affiant related in the affidavit so as to adequately
inform the magistrate of the underlying circumstances upon
which he could predicate a finding of probable cause.

2. SEARCHES AND SEIZURES—SEARCH WARRANTS—AFFIDAVITS—STALE-
NESS OF INFORMATION.

Information contained in an affidavit upon which a search war-
rant was issued is not open to a charge of staleness because
certain events mentioned within the affidavit were remote in
time where the search warrant was obtained and executed
within hours after the pertinent events described in certain
other portions of the affidavit.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 68 Am Jur 2d, Searches and Seizures §§ 42, 65.
Propriety of considering hearsay or other incompetent evidence in
establishing probable cause for issuance of search warrant. 10
ALR3d 359.

[3] 68 Am Jur 2d, Searches and Seizures §§ 41–44.

[4, 8] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 45–47.
What constitutes "possession" of a narcotic drug proscribed by § 2
of the Uniform Narcotic Drug Act. 91 ALR2d 810.

[5] 21 Am Jur 2d, Criminal Law §§ 485–487, 505.
Court's duty to advise or admonish accused as to consequences of
plea of guilty, or to determine that he is advised thereof. 97
ALR2d 549.

[6, 10] 5 Am Jur 2d, Appeal and Error § 545 et seq.

[6] 21 Am Jur 2d, Criminal Law § 349 et seq.

[7] 5 Am Jur 2d, Appeal and Error §§ 880–887.

[9] 75 Am Jur 2d, Trial § 211 et seq.

[11] 58 Am Jur, Witnesses § 860 et seq.

3. CRIMINAL LAW—PRELIMINARY EXAMINATION—PROBABLE CAUSE—
   APPEAL AND ERROR—DISCRETION.

   The question of probable cause at a preliminary examination is
   primarily one for the consideration and determination of the
   examining magistrate; neither the trial court nor the Court of
   Appeals should substitute its judgment for that of the magis-
   trate except when a clear abuse of discretion is apparent.

4. DRUGS AND NARCOTICS—CRIMINAL LAW—ILLEGAL POSSESSION—
   CONTROL—ELEMENTS OF OFFENSE.

   Establishing illegal possession of a controlled substance requires
   proof that a defendant exercised control or had the right to
   exercise control over the controlled substance; that he knew
   the proscribed substance was present, and knew the substance
   was proscribed and that the substance, according to all the
   facts and circumstances in the case, could be reasonably infer-
   red to be a remnant of a usable amount.

5. CRIMINAL LAW—EVIDENCE—STATEMENTS BY DEFENDANT—VOLUN-
   TARINESS—ADMISSIBILITY—APPEAL AND ERROR.

   A ruling, after an evidentiary hearing, that certain statements of
   a defendant were voluntary and therefore properly admissible
   at trial should be affirmed on appeal where after examining the
   entire relevant record the appellate court is not left with a
   definite and firm conviction that a mistake was committed by
   the trial judge in his ruling.

6. CRIMINAL LAW—STATEMENTS BY DEFENDANT—VOLUNTARINESS—
   APPEAL AND ERROR—PRESERVING QUESTION.

   A defendant is barred from raising on appeal the issue of alleged
   police questioning after he invoked his right to remain silent
   where there was no record developed below with respect to that
   issue and where no objection on this basis was made at trial.

7. CRIMINAL LAW—EVIDENCE—RELEVANCE—MATERIALITY—JUDICIAL
   DISCRETION—APPEAL AND ERROR.

   A trial court has considerable discretion insofar as relevancy and
   materiality of evidence and the Court of Appeals will reverse a
   lower court only if there was an abuse of discretion in admit-
   ting or excluding such evidence at trial.

8. CRIMINAL LAW—DRUGS AND NARCOTICS—POSSESSION—EVIDENCE.

   It was proper to admit testimony concerning jars in a defendant's
   bedroom even where the jars were not introduced into evi-
   dence, and testimony of the street value of cocaine and mari-
   juana where the trial was for possession of controlled sub-
   stances and not for sale, which would be a criminal offense

apart from the ones with which the defendant was charged, where the testimony on the jars described part of the res gestae of the crimes charged and the testimony on street value, although not part of the res gestae, had a relevance to the motive and intent to possess the controlled substances with the possession of which the defendant was charged.

9. CRIMINAL LAW—PROSECUTOR'S REMARKS—DRUGS AND NARCOTICS —EVIDENCE.

A prosecutor's remark referring to a defendant as a "dope dealer" in a trial in which he was charged only with possession of controlled substances was not improper where the inference that the defendant was in the habit of selling or intending to sell drugs, if in fact he possessed them, was a reasonable inference from the evidence presented at the trial and a proper statement of the people's theory of the case being tried, especially with respect to the defendant's motive for possessing drugs and the necessary intent involved in showing illegal possession of drugs.

10. CRIMINAL LAW—PROSECUTOR'S REMARKS—CURATIVE INSTRUCTION —APPEAL AND ERROR—PRESERVING QUESTION.

A defendant's failure to object to a prosecutor's allegedly prejudicial argument where the error, if any, could have been cured by an instruction precludes appellate consideration.

11. DRUGS AND NARCOTICS—CRIMINAL LAW—POSSESSION—EVIDENCE— INFERENCES—CREDIBILITY.

A fact finder could reasonably infer that a defendant exercised possession or control over controlled substances found in a dresser in a bedroom used by the defendant, where the evidence showed that the dresser contained men's clothing, an insurance policy and repair bill made out in defendant's name, and that defendant got his socks from the dresser when dressing to go to the police station; the fact that the defendant's mother testified that his girlfriend shared the dresser with the defendant simply presented an issue of credibility for the fact finder's resolution.

Appeal from Wayne, Benjamin D. Burdick, J. Submitted Division 1 April 10, 1975, at Detroit. (Docket No. 18920.) Decided June 9, 1975.

Perry H. Gould was convicted of possession of cocaine. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research, Training and Appeals, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Zemke & Lustig, P. C.,* for defendant.

Before: R. B. BURNS, P. J., and M. J. KELLY and O'HARA,* JJ.

O'HARA, J. The defendant was charged with possession of marijuana with intent to deliver, MCLA 335.341(1)(c); MSA 18.1070(41)(1)(c), and possession of cocaine, MCLA 335.341(4)(b); MSA 18.1070(41)(4)(b). A jury trial was had and defendant was found guilty of possession of cocaine. Defendant was found not guilty of possession of marijuana with intent to deliver. The trial court sentenced defendant to 2 years probation with the first 6 months of that probation to be spent in the Detroit House of Correction.

The first assignment of error we discuss pertains to a claim that the affidavit upon which the search warrant in the instant case was based was deficient under the Fourth Amendment to the United States Constitution. To begin with, defendant notes, the affidavit fails to set forth any facts indicating the reliability of the informant from whom the affiant received his information concerning defendant's alleged possession of drugs. Such facts, it is claimed, are essential to issuance of a valid search warrant when the allegations in the affidavit are not within the personal knowledge of the affiant. The defendant asserts also that most of

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

the information contained in the search warrant was so stale or remote that it would not support probable cause to believe that the pertinent events were still happening.

Now it is true that the affiant, a state police officer, fails to state explicitly in the affidavit that the informant had previously provided trustworthy information although it may be inferred from the prior successful dealings, cited in the affidavit,[1] the affiant had with the informant that he found the informant reliable enough to continue dealing with him and, finally, to affirmatively act upon the information to the extent of obtaining a search warrant. Even were we to concede *arguendo* that certain portions of the affidavit could possibly raise questions vis-a-vis such United States Supreme Court cases as *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964), and *Spinelli v United States,* 393 US 410; 89 S Ct 584; 21 L Ed 2d 637 (1969), the unvarnished fact remains that other sections of the affidavit furnish the requisite probable cause for issuance of the search warrant. There are sufficient facts personally observed by the affiant concerning the June 29, 1973 transaction which were related in the affidavit so as to adequately inform the magistrate of the underlying circumstances upon which he could predicate a finding of probable cause. We have read the affidavit in the "common-sense manner" which our Supreme Court has stated to be the proper approach to construing such affidavits. See *People v Iaconis,* 29 Mich App 443; 185 NW2d 609 (1971), aff'd *People v Bercheny,* 387 Mich 431; 196 NW2d 767 (1972), in which this Court's opinion in *Ia-*

---

[1] There are some general references to alleged prior purchases by the informer from defendant which are difficult to evaluate as to the affiant's personal knowledge with respect thereto.

*conis, supra,* was adopted as the Supreme Court's opinion.

The same information is obviously not open to a charge of staleness, since the search warrant in the instant case was obtained and executed within hours after the pertinent events described in certain portions of the affidavit. Under the circumstances, we need not decide whether or not events mentioned in other paragraphs of the affidavit were too remote in time to support a finding of probable cause.

The defendant next claims that the prosecution introduced no evidence at the preliminary examination on which there could be probable cause to believe that he unlawfully possessed cocaine and marijuana. From the admitted fact that several other persons resided in and were in fact present in the house when defendant was arrested, the defendant goes on to assert that the prosecution did not introduce evidence adequately connecting him *personally* with the drugs confiscated, as contrasted with the other household members who equally might have had knowledge of or been in possession of the involved narcotics. Because of this alleged deficiency in proof at the preliminary hearing it is asserted that the trial judge erred when he denied defendant's motion to quash the information in the instant case.

The applicable law is well established in this jurisdiction. In *People v Sparks,* 53 Mich App 452, 456; 220 NW2d 153 (1974), *lv den,* 393 Mich 135 (1974), this Court, citing applicable Supreme Court authority, stated:

"The question of probable cause is primarily one for the consideration and determination of the examining magistrate. Neither the trial court nor the Court of Appeals should substitute its judgment for that of the

magistrate, except when a clear abuse of discretion is apparent. *People v Medley,* 339 Mich 486; 64 NW2d 708 (1954)."

We also recently described the elements necessary to establish illegal possession under the Controlled Substances Act of 1971 as follows:

"In our view, following *Harrington*[2], * * * illegal possession requires proof that defendant exercised control or had the right to exercise control over the controlled substance; that he knew the proscribed substance was present, and knew the substance was proscribed, and that the substance, according to all the facts and circumstances in the case, could be reasonably inferred to be a remnant of a usable amount. *Cf.* CALJIC 12.00, 12.06, *People v Harrington, supra.*" *People v Stewart,* 52 Mich App 477, 488; 217 NW2d 894 (1974).

A detailed review of the evidence adduced at the preliminary examination need not be gone into. In our opinion there was no clear abuse of discretion in the magistrate's finding of probable cause.

The third issue raised by defendant relates to a claim that the trial court erred in finding at a *Walker*[3] hearing that certain statements of defendant were voluntary and hence properly admissible at trial.

The sole question raised and litigated by defendant at the *Walker* hearing in the lower court was whether he had been given his *Miranda*[4] warnings before or after he made the statements at issue. Defendant now claims, for the first time on appeal,

---

[2] *People v Harrington,* 33 Mich App 548; 190 NW2d 343 (1971).

[3] *People v Walker* (on rehearing), 374 Mich 331; 132 NW2d 87 (1965).

[4] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

that his statements were involuntary even if he was given the *Miranda* warnings before he made them because his statements were made in response to police questioning which occurred subsequent to his clear indication that he wished to exercise his right to remain silent.

In the instant case, there was a direct conflict of testimony as to when defendant was first given his *Miranda* warnings. One officer testified that he had given defendant the *Miranda* warnings immediately after placing defendant under arrest at defendant's home. Defendant testified that he was given the *Miranda* rights for the first time at the police station while he was being booked. Defendant's mother and girlfriend testified, in essence, that they did not remember defendant being given his *Miranda* warnings although they were present at the time the officer testified this occurred.

The trial court had the opportunity to observe these witnesses. All of them had some interest in the outcome. We are not left, after examining the entire relevant record, with "a definite and firm conviction that a mistake was committed by the trial judge in his ruling", *People v McGillen #1,* 392 Mich 251, 257; 220 NW2d 677 (1974), and we thus affirm the ruling of the trial judge.

Since there was no record developed below with respect to alleged police questioning after defendant invoked his right to remain silent and since no objection on this basis was made at trial, it is evident that defendant should be barred from raising the issue now. This sort of failure to preserve a voluntariness issue was discussed in *People v Drielick,* 56 Mich App 664; 224 NW2d 712 (1974). Additionally, the statements in question were admissions, not a confession. *Drielick, supra.*

The fourth claim of error is that the prosecutor

elicited testimony which was irrelevant to the offenses for which defendant was being tried, *i.e.,* possession of narcotics, with the obvious motive of prejudicing defendant before the jury by purportedly showing defendant to be a person who dealt in drugs for a profit. Further complaint is made with respect to the prosecutor's reference in his opening statement to a second bag of a substance found in a dresser in defendant's bedroom which appeared to be the same kind of substance as was found upon analysis of the contents of the first bag to contain cocaine.

In his brief on appeal defendant specifically objects to one officer's testimony concerning the street value of cocaine and marijuana and another police officer's testimony describing a jar which was labeled "lactose" and a jar which was labeled "dextrose" he had observed in defendant's bedroom. Defense counsel objected at trial to the first officer's testimony as irrelevant and the other officer's testimony as inadmissible because the jars were not going to be introduced into evidence.

This Court has indicated that the trial bench has considerable discretion insofar as relevancy and materiality of evidence and that we will reverse a lower court only if there was an abuse of discretion in admitting or excluding such evidence at trial. *People v Harrell,* 54 Mich App 554; 221 NW2d 411 (1974).

In *People v Koehler,* 54 Mich App 624, 633–634; 221 NW2d 398 (1974), Judge McGregor speaking for the Court stated:

"Officer Huston testified that he purchased four purple tablets from defendant, after defendant told him the tablets were LSD, and testified at trial that the three purple tablets introduced by the people appeared to be the same ones he had purchased from the defendant.

The prosecution's expert witness testified that he had scientifically analyzed one of the four purple tablets given him for analysis and that his analyses conclusively demonstrated the presence of LSD in the tablet tested, and that, although he did not chemically analyze the remaining three tablets, they appeared physically identical with the one tablet which he had analyzed. This testimony established an adequate factual foundation for introduction of the three purple tablets at trial. (Citations omitted.) Defendant's objection with respect to the three unanalyzed tablets is more properly addressed to their probative value than to their admissibility."

In that case, defendant Koehler also argued that it clearly was reversible error to introduce the officer's testimony as to his efforts to purchase PCP from defendant since it tended to establish the commission of a separate, uncharged criminal offense. To this the Court replied:

"Defendant's argument is not well taken for a number of reasons. First, it is arguable that the testimony regarding the PCP was admissible at trial to show defendant's scheme, plan, or intent as a dealer in illegal narcotic drugs. See MCLA 768.27; MSA 28.1050, *People v Jones*, 38 Mich App 512; 196 NW2d 817 (1972). Second, defendant's showing of the brown tablets to Officer Huston, his statement that these tablets were PCP, and his further remark that he could not sell any of these to Huston because he was holding them for another, constituted a vital portion of the res gestae of the crime and were properly put before the jury as an integral portion of the entire transaction." (Citations omitted.) 54 Mich App at 634–635.

In the instant case, the testimony concerning the jars of lactose and dextrose in defendant's bedroom and the testimony as to the street value of cocaine and marijuana, taken together, raised by implication the possibility that defendant sold

drugs. This would be a criminal offense apart from the ones with which he was charged, since those involved possession only. However, the testimony relating to the lactose and dextrose jars obviously also describes part of the res gestae of the crimes charged in the instant case. More importantly, this testimony has a direct bearing on the intent which is an element of possession of controlled substances—that is, the exercise of control or the right to exercise control over the controlled substance. *People v Stewart, supra.*

The testimony concerning the street value of cocaine and marijuana, although not a part of the res gestae of the crimes charged in the instant case, had the same sort of relevance to motive and intent, more particularly to motive for possession. Admittedly this is more the situation insofar as the marijuana count, which charged possession with intent to deliver, as contrasted with the other charge alleging possession of cocaine. But giving due consideration to the broad discretion entrusted to the trial judge in the admission or exclusion of physical or testimonial evidence we cannot say he abused his discretion to the extent of committing reversible error in admitting testimony as to the street value of both the marijuana and the cocaine.

We conclude that the trial court did not err reversibly in ruling that testimony concerning the jars of lactose and dextrose and the street value of cocaine and marijuana was admissible in the instant case.

The next assignment of error partakes of somewhat the same character as the preceding one. In essence, it is the contention of defendant that the prosecutor impermissibly sought to prejudice defendant before the jury by referring to him as a

"dope dealer" when he was only charged with possession of certain controlled substances. The claim is made that the remarks were so inherently prejudicial that a curative instruction would have been for naught. Therefore, despite defendant's lack of objection at trial, his conviction should be reversed.

The inference that defendant was in the habit of selling or intended to sell the drugs which he possessed, if indeed, he possessed them, would seem to be a reasonable inference from and comment on the evidence presented at the instant trial. See generally, *People v Giacalone,* 52 Mich App 428; 217 NW2d 444 (1974), *lv granted,* 392 Mich 810 (1974).[5] Examples of the pertinent evidence are testimony concerning the quantities of controlled substances found in the bedroom, the presence of a set of gram scales and a jar of lactose and a jar of dextrose in the bedroom, and testimony that lactose and dextrose are commonly used to dilute or cut drugs before they are sold. The prosecutor's argument that defendant dealt in drugs would therefore appear to be a proper statement of the people's theory of the instant case, especially with respect to defendant's motive for possessing drugs and the necessary intent involved in showing illegal possession of drugs.

Assuming *arguendo* that the prosecutor's argument was improper, the allegedly prejudicial effect of the remarks would have been quickly and completely rectified by an immediate curative instruction. Failure to object under the circumstances would preclude our consideration of the issue on

---

[5] *See People v John Martin,* 37 Mich App 621; 194 NW2d 909 (1972), *remanded for resentencing,* 387 Mich 766 (1972), wherein the prosecutor referred to an apparent first-time seller of narcotics as a "pusher".

appeal. *People v Plozai,* 50 Mich App 131; 212 NW2d 721 (1973).

Finally, the appellant argues that since several other persons besides defendant himself had access to the bedroom in which the controlled substances were found the people had the burden of producing some evidence from which the jury could reasonably infer that it was defendant who knew of the presence of the illicit drugs and who exercised possession or control over the proscribed substances. The people allegedly did not introduce such evidence. Hence, the trial court erroneously denied defendant's motion for a directed verdict in the instant case.

At trial of the instant case, it was uncontroverted that the cocaine[6] was found in a dresser in a bedroom used by defendant. There was much testimony that the dresser contained men's clothing. No one could remember seeing any women's clothing in that dresser. In the top drawer of that dresser was an insurance policy and a repair bill made out to Perry Gould and P. Gould respectively. That he used the dresser for storage of fundamental items of clothing such as tee shirts, shorts and socks and yet never noticed a bag of strange brown powder amongst these garments hardly seems a reasonable inference. There was also testimony that defendant got his socks from this dresser when he was dressing to go to the police station, again lending credence to the inference that he controlled this particular dresser. The fact that defendant's mother testified that his girlfriend shared the dresser with defendant simply presented an issue of credibility for the jury's

---

[6] We need not discuss the possession of marijuana with intent to deliver charge since defendant was acquitted by the jury on that count.

resolution. Thus the fact finder could reasonably infer that the dresser in question was used by defendant and under his control, and that if there was a bag of cocaine amongst his effects, he had put it there. There was no error in denying defendant's motion for a directed verdict.

The conviction is affirmed.