PEOPLE v SECREST

Docket No. 66006. Decided June 28, 1982. On application by the
defendant for leave to appeal, the Supreme Court, in lieu of
granting leave to appeal, reversed the judgment of the Court of
Appeals, reinstated the judgment of the Recorder's Court of
Detroit, and remanded the case to that court for further
proceedings. Rehearing denied 414 Mich 1102.

Ronald Secrest was convicted by a jury of first-degree murder,
assault with intent to commit murder, and possession of a
firearm during the commission of a felony. He moved for a new
trial, alleging that certain photographs seized by the police in
the execution of a search warrant were without the scope of
the warrant and that his right to be secure from unreasonable
search and seizure was violated. The Recorder's Court of De-
troit, George W. Crockett, III, J., granted the motion. The Court
of Appeals, J. H. Gillis, P.J., and N. J. Kaufman and R. M.
Maher, JJ., reversed and reinstated the defendant's convictions
in an opinion per curiam (Docket No. 50993). The defendant
appeals.

In a unanimous opinion per curiam, the Supreme Court *held:*

Evidence of items seized by the police under the plain view
doctrine during a valid search must be suppressed where it was
not immediately apparent that the evidence connected the
defendant with the crime or that there existed a reasonable
basis for connecting the objects seized with the crime. The
seizure cannot be justified by a subsequent connection.

1. The state constitution imposes a higher standard of protec-
tion against unreasonable searches and seizures than does the
federal; however, federal case law is instructive in analyzing
the state provision. Under federal case law, while the police
may seize items not identified in a search warrant which are
inadvertently uncovered during their search, there must be a
nexus between the items seized and criminal behavior. This
nexus is automatically provided in the case of fruits or instru-
mentalities of the crime or contraband, but, where mere evi-
dence is involved, probable cause to believe that the evidence
will aid in the apprehension or conviction of the suspect must

be determined to exist. The incriminating nature of the evidence must be immediately apparent.

2. In this case, the police did not know what the defendant looked like before the seizure of the photographs, and therefore could not have had a reasonable belief that the photographs would aid in apprehending him. At the time of the seizure, it could not have been immediately apparent that the photographs of persons unknown to the police were incriminating. To permit the police to seize items in plain view which only later connect a defendant with a crime would allow them to operate under a general warrant.

The judgment of the Court of Appeals is reversed, the judgment of the Recorder's Court of Detroit is reinstated, and the case is remanded for further proceedings.

100 Mich App 692; 300 NW2d 373 (1980) reversed and remanded.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people.

*Daniel J. Blank* for defendant.

PER CURIAM. In executing a search warrant, the police seized two photographs of the defendant which were not listed in the warrant as items to be taken. We are asked to evaluate this seizure under Const 1963, art 1, § 11.

I

The defendant is said to have wounded James Smith, Jr., and killed Floyd Smith on October 19, 1978. He was charged with first-degree murder,[1] assault with intent to commit murder,[2] and posses-

---

[1] MCL 750.316; MSA 28.548.
[2] MCL 750.83; MSA 28.278.

sion of a firearm during the commission of a felony.[3] A jury convicted him of all three charges.

The defendant filed a motion for' new trial. Among the issues raised in the motion was an allegation that the seizure of two photographs violated US Const, Am IV. The police had obtained a search warrant to enable them to enter the defendant's residence and seize:

"1. Any and all .38 caliber handguns.
"2. Any and all .38 caliber ammunition."

The search was conducted, and the items listed as seized were:

"1 box .38 cal. ammunition
"1 Browning automatic serial #585587
"3 boxes 9 mm shells
"$1568 in bills (for safekeeping)."

Also seized, however, were the two photographs.[4] One photograph depicted four men and the other a man and a woman; the man who appeared in both was subsequently identified as the assailant.

There was no pretrial motion to suppress, because defense counsel was unaware of the existence of the photographs until after the middle of the trial. At trial, the prosecution used the photographs to bolster witness identification and to impeach alibi testimony. Identification was a critical issue at trial. The photographs were the only two exhibits requested and received by the jury.

[3] MCL 750.227b; MSA 28.424(2).

[4] Failure to list the photographs among the items seized violated MCL 780.655; MSA 28.1259(5), which requires an officer executing a search warrant to make a "complete and accurate tabulation of the property and things so seized."

The prosecutor does not seriously contest the fact that the defendant was prejudiced by the surprising production and use of the photographs during trial. The defendant's brief outlined the manner in which the photographs were used during the trial and how he was thereby prejudiced.

The trial judge granted the motion for new trial. After the prosecutor's motion for reconsideration was denied, he pursued the issue in the Court of Appeals. That Court reversed and reinstated the defendant's convictions. 100 Mich App 692; 300 NW2d 373 (1980).

## II

The defendant now argues that the seizure was invalid under Const 1963, art 1, § 11, rather than under US Const, Am IV. The former provides:

"The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation. The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state."

The corresponding federal provision is:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

There are differences in wording between the two. As a result, we have imposed a higher standard under the state provision than the federal when the item seized is not one within the proviso of the third sentence of art 1, § 11. *People v Moore,* 391 Mich 426, 435; 216 NW2d 770 (1974); *People v Beavers,* 393 Mich 554, 567-568; 227 NW2d 511 (1975). In doing so, however, we have in the past looked to federal case authority in our analysis of the state constitutional question, and we do so here.

## III

In *People v Preuss,* 225 Mich 115; 195 NW 684 (1923), we considered the propriety of seizing property not identified in the search warrant that provided the basis for the sheriff's entry into a private residence. Authorized to search for and seize stolen beans, the sheriff seized seven gallons of moonshine whiskey found in one of the defendant's bedrooms. We said:

"In the instant case a search was necessary to discover the evidence seized. It was ostensibly made under authority of the search and seizure law. Except as he followed the strict mandate of his warrant to search for and seize if found a described quantity of beans the officer was a trespasser upon those premises. Defendant was not in the house when he made the search. He found no property of the kind he was directed to seize, but in violation of the mandate of his search warrant seized property of an entirely different kind, which 'constitutes the officer a trespasser' and his seizure unlawful." 225 Mich 120-121.

The Fourth Amendment has been the subject of repeated, painstaking analysis in the years since 1923, but we have not had an opportunity to

readdress this issue since then. The United States Supreme Court has provided some guidance, however. Shortly after the *Preuss* decision, the Court said much the same thing we said in *Preuss:*

"The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant." *Marron v United States,* 275 US 192, 196; 48 S Ct 74; 72 L Ed 231 (1927).

Nevertheless the Court ruled that police had a right to "seize the things used to carry on the criminal enterprise"[5] even though the items were not identified in the search warrant. In a later decision, the Court concluded that police were not required to "impotently stand aside and refrain from seizing"[6] contraband once they were lawfully on the premises. Adoption of the "plain view" doctrine in *People v Whalen,* 390 Mich 672; 213 NW2d 116 (1973), further eroded the notion that only those items listed in a search warrant could lawfully be seized. See also *People v Alicki,* 321 Mich 701; 33 NW2d 124 (1948). The Court of Appeals correctly concluded that *Preuss* is no longer considered tenable law in this state.

The prosecutor cites the case that abolished the "mere evidence" rule as supporting his position:

"There must, of course, be a nexus—automatically provided in the case of fruits, instrumentalities or contraband—between the item to be seized and criminal behavior. Thus in the case of 'mere evidence', probable cause must be examined in terms of cause to believe

---

[5] 275 US 199.

[6] *Harris v United States,* 331 US 145, 155; 67 S Ct 1098; 91 L Ed 1399 (1947).

that the evidence sought will aid in a particular apprehension or conviction." *Warden v Hayden,* 387 US 294, 307; 87 S Ct 1642; 18 L Ed 2d 782 (1967).

It is the language "will aid in a particular apprehension" on which the prosecutor relies to justify the seizure here. Until this search, the prosecutor had no photographs of the defendant and the photographs were used in identification procedures. However, the holding in *Warden,* that the "mere evidence" rule should be abolished, affords little if any guidance as to the parameters of a "plain view" search and seizure. Further, we believe that the prosecutor's position is based on too broad a reading of the *Hayden* language. At issue in *Hayden* was the admissibility of clothes seized during a search incident to an arrest:

"The clothes found in the washing machine matched the description of those worn by the robber and the police therefore could reasonably believe that the items would aid in the identification of the culprit."

In contrast, in this case, the police did not know what the defendant looked like before the photographs were seized. He was not present when the search warrant was executed. Therefore, the police could not have had a *reasonable* belief that these photographs would aid in apprehension.

The Court's later comments on this issue in *Coolidge v New Hampshire,* 403 US 443, 466; 91 S Ct 2022; 29 L Ed 2d 564 (1971), also suggest too broad a reading of *Hayden* by the prosecutor:

"What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the

prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them; the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges."

There must be something incriminating about the evidence the police inadvertently come upon; indeed, some courts have added the incriminating nature must be "immediately apparent".[7] The cases the prosecutor has marshalled in support of his argument justify such seizures on the basis that the evidence was "immediately facially recognizable"[8] as connecting the defendant to a crime or that there existed " 'a reasonable basis for drawing a connection between the observed [evidentiary] objects and the crime' ".[9] We cannot find that it was immediately apparent that the photographs of individuals unknown to the police were incriminating.

Without this more limited reading of *Hayden,* we fear we would come too quickly to what Justice Stewart described as "the general searches and unrestrained seizures that had been a hated hallmark of colonial rule".[10] The warrant in this case directed the officers to search for a weapon and for ammunition. Either can be quite small. If the

---

[7] *United States v Gray,* 484 F2d 352, 355 (CA 6, 1973); *United States v Truitt,* 521 F2d 1174 (CA 6, 1975).

[8] *State v Severtson,* 304 Minn 487, 490; 232 NW2d 95 (1975).

[9] *State v Hamilton,* 236 NW2d 325, 329 (Iowa, 1975), quoting from *Bell v State,* 482 P2d 854, 860 (Alas, 1971).

[10] *Stanley v Georgia,* 394 US 557, 569; 89 S Ct 1243; 22 L Ed 2d 542 (1969) (Stewart, J., concurring in the result).

police can, while scouring a house looking for these objects, seize as being in plain view items which only later serve to connect the defendant to a crime, then they are effectively operating under a general warrant.

The photographs should be suppressed under Const 1963, art 1, § 11. In lieu of granting leave to appeal, pursuant to GCR 1963, 853.2(4), we reverse the judgment of the Court of Appeals, reinstate the judgment of the trial court, and remand the case to Recorder's Court for further proceedings.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.