PEOPLE v WARD

Docket No. 60310. Submitted December 8, 1983, at Lansing.—Decided
March 7, 1984. Leave to appeal applied for.

   Michael C. Ward was charged in Washtenaw Circuit Court with
   possession with intent to deliver 650 or more grams of cocaine.
   Following a jury trial before Ross W. Campbell, Jr., J., defen-
   dant was convicted on that charge and was given the statuto-
   rily mandated life sentence. The same underlying events which
   resulted in this charge in Washtenaw Circuit Court for posses-
   sion with intent to deliver cocaine also resulted in a charge in
   Ingham Circuit Court for conspiracy to deliver cocaine. The
   Ingham Circuit Court granted a motion to suppress evidence
   and dismissed the conspiracy charge; however, the Court of
   Appeals held that the suppression of the evidence was improper
   and reversed and remanded the matter to the Ingham Circuit
   Court. *People v Ward,* 107 Mich App 38 (1981). Defendant now
   appeals from his conviction and sentence on the Washtenaw
   delivery charge. *Held:*

      1. Defendant's claims in the present case are the same as the
   issues raised and decided in the appeal of the Ingham County
   conspiracy charge. Collateral estoppel bars relitigation of issues

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law §§ 321, 331.
    46 Am Jur 2d, Judgments §§ 518, 531.
[2] 68 Am Jur 2d, Searches and Seizures §§ 85, 88.
[3] 21A Am Jur 2d, Criminal Law § 825.
[4] 29 Am Jur 2d, Evidence § 327.
    81 Am Jur 2d, Witnesses § 569 *et seq.*
[5] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 45.
[6] 25 Am Jur 2d, Drugs, Narcotics, and Poisons § 17.
    29 Am Jur 2d, Evidence §§ 363, 387.
    Validity and construction of statute creating presumption of infer-
       ence of intent to sell from possession of specified quantity of
       illegal drugs. 60 ALR3d 1128.
[7] 21 Am Jur 2d, Criminal Law §§ 539, 627 *et seq.*
    25 Am Jur 2d, Drugs, Narcotics, and Poisons § 48.
    Validity of state statute imposing mandatory sentence or prohibit-
       ing granting of probation or suspension of sentence for narcotics
       offenses. 81 ALR3d 1192.

previously decided where the parties to the second litigation are the same as those in the prior litigation. The prosecutors of Ingham County and Washtenaw County being creatures of a common sovereign, the State of Michigan, there was identity of parties, as well as identity of factual and legal issues, and collateral estoppel is applicable. The determination of this Court in the appeal from the Ingham County case is binding and controlling in the present case.

2. The police may properly seize evidence which is not listed in a search warrant where such evidence is inadvertently observed at the place which is the subject of the search warrant and where, at the time of the observation, it is immediately apparent to the police that the evidence is incriminating. Most of the items seized in the search of the Ann Arbor motel room pursuant to a search warrant which were not listed in that warrant were of an incriminating nature which was immediately apparent to the police. The trial court, accordingly, properly admitted those items into evidence.

3. Allegations of error with respect to the admission of evidence will not be heard on appeal where defense counsel attempts at trial to use that evidence to the defendant's advantage.

4. The trial court did not abuse its discretion with respect to the admission of evidence of defendant's prior convictions.

5. The trial court properly admitted testimony concerning the street value of the cocaine.

6. The classification of cocaine with narcotic drugs for penalty purposes does not violate the due process or equal protection rights of those charged under the controlled substances provisions of the Public Health Code.

7. The mandatory life sentence for one convicted of possessing with intent to deliver 650 or more grams of cocaine does not constitute cruel and unusual punishment.

Affirmed.

M. J. KELLY, P.J., concurred. While he still believes that the mandatory life sentence for delivery of 650 or more grams of cocaine constitutes cruel and unusual punishment, he concurred in the result in view of the fact that his point of view has little support.

1. ACTIONS — COLLATERAL ESTOPPEL — CRIMINAL LAW.

The doctrine of collateral estoppel bars relitigation of issues previously decided where the parties to the second litigation are the same as those in the prior litigation; the doctrine of collateral estoppel applies to criminal as well as civil matters;

there is identity of parties where criminal actions are brought against the same defendant in different counties of the state, since the prosecutor of each county is the creature of the same sovereign, the State of Michigan.

2. Searches and Seizures — Search Warrants.

The police may properly seize items other than those described on a search warrant which are found on the premises to which the search warrant is directed where it becomes immediately apparent to the police that the items which are inadvertently found are evidence of an incriminating nature (Const 1963, art 1, § 11).

3. Criminal Law — Appeal — Trial Tactics.

The Court of Appeals will not allow a defendant to use as grounds for reversal a possible error which the defendant attempted to use at trial to his tactical advantage.

4. Evidence — Criminal Law — Prior Convictions — Impeachment.

The similarity between a prior conviction and a charged crime does not, per se, bar the use of evidence of the prior conviction for impeachment purposes (MRE 609[a][2]).

5. Controlled Substances — Street Value — Evidence.

It is not an abuse of discretion for a trial court to admit in a trial for possession with intent to deliver a controlled substance testimony as to the street value of the controlled substance, since such testimony is relevant to the question of the intent to deliver the controlled substance (MRE 403).

6. Controlled Substances — Cocaine — Classification of Controlled Substances.

The classification of cocaine with narcotic drugs for penalty purposes does not violate an individual's right to due process or equal protection.

7. Controlled Substances — Cocaine — Cruel and Unusual Punishment.

The mandatory life sentence for possession with intent to deliver 650 or more grams of cocaine does not constitute cruel and unusual punishment.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William F. Delhey,* Pros-

ecuting Attorney, and *David A. King,* Assistant
Prosecuting Attorney, for the people.

State Appellate Defender (by *Terrence R. Flana-
gan),* for defendant on appeal.

Before: M. J. KELLY, P.J., and CYNAR and J. C.
KINGSLEY,* JJ.

PER CURIAM. On April 7, 1981, defendant Mi-
chael Ward, also known as Kenneth Dean Watson,
was found guilty by a Washtenaw County jury of
possession of a controlled substance with intent to
deliver 650 or more grams, contrary to MCL
333.7401, subds (1) and (2)(a)(i); MSA 14.15(7401),
subds (1) and (2)(a)(i). Defendant was sentenced to
a statutorily mandated life sentence and appeals
as of right.

The facts set forth below resulted in two crimi-
nal prosecutions: the one which comprises the
instant case, and an Ingham County prosecution
for conspiracy to deliver cocaine. A lower court
order dismissing the Ingham County charge was
reversed by this Court, *People v Ward,* 107 Mich
App 38; 308 NW2d 664 (1981), *lv den* 417 Mich 938
(1983).

In March, 1979, the Tri-County Metro Narcotic
Squad was investigating cocaine trafficking in the
Michigan State University campus area. Informa-
tion had been received that one Randall Seaver
was a large-scale cocaine dealer in the Lansing
area. The house that Seaver lived in on West Lake
Lansing Road in Ingham County was placed under
periodic surveillance beginning in late 1978 or
early 1979. Tri-County Metro Officer Rick Boyd
testified that on two separate occasions informa-

* Circuit judge, sitting on the Court of Appeals by assignment.

tion was received from two reliable confidential informants to the effect that Seaver was distributing "large loads" of cocaine. On or about March 17, 1979, Officer Boyd was told by a confidential informant that Seaver was expecting "a load" of cocaine to come in during that particular week. Tri-County Metro officers began a continuous surveillance of Seaver's house, starting on March 20, 1979. The house next door to Mr. Seaver's residence was for sale at the time and was unoccupied. The realtor allowed the Tri-County Metro officers to use the house for their surveillance.

On the afternoon of March 20, 1979, defendant was observed for the first time by the Tri-County Metro surveillance team. He arrived at Seaver's house on West Lake Lansing Road, driving a white 1979 Pontiac Bonneville. He removed a briefcase from the trunk of his car and carried it into Seaver's house. A short time later, defendant was observed leaving the house carrying the briefcase. He placed the briefcase in the trunk of the car and drove away. Defendant reappeared at the Seaver residence, stayed for a short period of time, and left again. The police officer on surveillance followed him south on US 127, east on I-96 to US 23 and then north to the M-59 exit. At this time, the surveillance officers saw a Michigan state police patrol car. Officer Stanley Granger spoke to the state trooper and requested that he stop defendant in order to ascertain his identity. As a result of the contact between defendant and the state trooper, it was learned that defendant had a Florida driver's license in the name of Kenneth Dean Watson with an address in Plantation, Florida. The state trooper informed the narcotics officers that he stopped defendant for an illegal turn, but no traffic citation was issued.

Defendant arrived again at Randall Seaver's residence on the afternoon of March 21, 1979. Officers Szilagyi and Granger were conducting their surveillance from the house next door to Mr. Seaver's residence. The distance between the two houses was approximately 125 feet. Officer Szilagyi observed defendant as he walked out of Seaver's house on the afternoon of March 21, 1979. Defendant came out of Seaver's house and walked to his rented vehicle parked in the driveway. Defendant was wearing a ski jacket. He opened the trunk of his car and proceeded to take something out of his coat pocket. Officer Szilagyi began taking pictures, using two different camera lenses, a 200 mm and 300 mm lens. At the same time, he relayed his observations by radio to Officer Boyd, who was parked at a 7-11 party store several hundred yards from Seaver's house. Officer Szilagyi thought he saw the defendant remove a white package the size of several hot dogs from his pocket. Officer Szilagyi believed the package to be cocaine. Defendant drove in a westerly direction on West Lake Lansing Road for one and one-half blocks, then made a U-turn and drove east. As defendant drove away, Szilagyi informed Boyd that he believed that the defendant had hidden cocaine in the rear-deck area of the trunk. Officer Boyd informed Szilagyi that he was going to stop defendant, place him under arrest, and obtain a search warrant for the car. Boyd followed defendant to a gas station located at Lake Lansing and Abbott Roads, approximately one-quarter mile from Seaver's house. Officer Boyd pulled his car in front of defendant's car. Defendant was ordered out of his car and searched. Boyd informed defendant that he was under arrest for violation of the controlled substances act.

Defendant had over $250 in cash in his pants pocket. Boyd informed defendant that he was going to jail and defendant requested that his jacket not be left in the car because it contained a large sum of money. Officer Boyd removed the jacket from the car. The inner pocket of the jacket contained $5,000 cash, mostly in small bills. Also found in the jacket was a large, gold-colored key, upon which was inscribed "147" in large numerals. A thorough search of the car revealed no glassine package, white substance, or cocaine. A small quantity of Quaaludes was found, as was a Florida driver's license in the name of Kenneth Dean Watson, and a slip of paper upon which was written "Ken, 157, 665-3500". Officer Boyd testified that although no cocaine was found in the car, defendant remained in custody on the basis of his being in possession of Quaaludes.

Within 15 minutes of defendant's arrest, other officers from the surveillance team made an entry without a warrant into Seaver's home. They detained Seaver and a female friend for several hours while awaiting the arrival of a search warrant. During this time, Seaver was "high" and fell asleep for a couple of hours, having previously ingested cocaine and Quaaludes. Before the issuance of the search warrant, the officers found Quaaludes, cocaine, and psilocybin mushrooms in Seaver's home. Officer Boyd arrived with the search warrant for the Seaver residence. Mr. Seaver approached Boyd and requested a private conversation. The two men went into a bedroom. Seaver asked Boyd if it would be helpful to his case if he had information to give to the police. Boyd informed Seaver that the Ingham County Prosecutor would have to approve any deals.

Officer Boyd informed Seaver that defendant

had already been arrested. Seaver told Boyd that the defendant's real name was Michael Ward. Seaver had known defendant for a long time and stated that defendant supplied Seaver with large quantities of cocaine. Seaver further stated that defendant had told him that same day that he had a large quantity of cocaine and money hidden in a motel room. Seaver did not know where the motel was located.

The telephone number found in defendant's car proved to be that of the Wolverine Inn. Through his telephone conversation with the clerk at the Wolverine Inn, Boyd discovered that the Inn was located in Ann Arbor and that a person named Kenneth Watson was registered in room 147. The front desk put Boyd through to room 147 but no one answered the room's telephone.

Boyd and two other officers traveled to Ann Arbor to obtain a warrant to search the hotel room. After securing the warrant, officer Boyd utilized the room key seized from defendant at arrest to open the door to room 147. Defendant's suitcase and clothing bag were searched first, and no cocaine was found in either one. The officers then looked under the bed and searched the drawers in the bathroom. One of the uniformed Ann Arbor officers unscrewed the plumbing access panel in the bedroom. He informed the other officers that there were two grocery bags inside the panel. Officer Granger removed both bags, which were sealed with silver duct tape. Both bags were opened. The first bag contained $55,900 cash. The money was wrapped in several stacks and consisted of 10-, 20-, 50-, and 100-dollar bills. The second bag contained 21 clear plastic heat-sealed bags containing a white powdery substance. The two grocery bags and their contents were taken by

the police. Also taken were the two pieces of luggage and their contents, hotel and rental car receipts found in the room, the contents of a shaving kit, an ink pen, an empty matchbook, and the plumbing access panel. The police obtained the guest registration slips for room 147 from the front desk clerk in the morning of March 22, 1979. The slip showed that room 147 was rented to Kenneth Watson on March 20, 1979. The room was paid for in cash.

Defendant was charged by the Washtenaw County prosecutor with possession with intent to deliver 650 or more grams of cocaine and possession of 650 or more grams of cocaine. (In Ingham County, defendant was charged with conspiracy to deliver cocaine.) Before his preliminary examination, defendant filed a motion to suppress evidence. This motion was denied. Defendant was bound over to circuit court. An evidentiary hearing was held on defendant's motion to quash the search warrant and to suppress evidence before Washtenaw County Circuit Court Judge Edward D. Deake, who denied defendant's motion in an opinion issued on May 14, 1980. A similar hearing was also held before Ingham County Circuit Court Judge James R. Giddings, who granted the motion and dismissed the charge against defendant pending in that county. This case, however, went to trial and defendant was found guilty as charged.

The first four issues raised by defendant concern the propriety of various searches and seizures undertaken during the investigation of this case. These issues were previously decided, adversely to defendant, by this Court when the Ingham County Prosecutor appealed Judge Giddings' dismissal of the conspiracy case. *People v Ward,* 107 Mich App 38; 308 NW2d 664 (1981), *lv den* 417 Mich 938

(1983). We agree with plaintiff that these issues are subject to collateral estoppel.

The doctrine of collateral estoppel, or issue preclusion, bars the relitigation of issues previously decided where the parties to a second litigation are the same as those in the prior litigation. *Rinaldi v Rinaldi,* 122 Mich App 391; 333 NW2d 61 (1983); *Topps-Toeller, Inc v Lansing,* 47 Mich App 720; 209 NW2d 843 (1973), *lv den* 390 Mich 788 (1973). The doctrine applies to criminal cases as well as civil matters. *Ashe v Swenson,* 397 US 436; 90 S Ct 1189; 25 L Ed 2d 469 (1970); *People v Gray,* 393 Mich 1; 222 NW2d 515 (1974).

The necessary elements for application of the doctrine are present. The legal and factual issues are the same. There is an identity of parties, as the Ingham and Washtenaw County prosecutors are creatures of a common sovereign, the State of Michigan. *People v Grainger,* 117 Mich App 740, 753-754; 324 NW2d 762 (1982). Also, because leave was denied by the Supreme Court in the Ingham County conspiracy case, the decision of the Court of Appeals has become the final adjudication. GCR 1963, 853.2(2). We conclude that defendant is barred from raising these same issues before this Court. See *People v Ford,* 19 Mich App 519; 173 NW2d 3 (1969).

Defendant next maintains that the trial court erred in allowing admission of items seized from the room at the Wolverine Inn which were not listed on the search warrant. In considering the propriety of seizing property not identified in a search warrant, we apply the standard used by the Supreme Court in *People v Secrest,* 413 Mich 521; 321 NW2d 368 (1982), *reh den* 414 Mich 1102 (1982). In that case the police had a warrant authorizing them to search for guns, ammunition,

and money. In executing the warrant, the police picked up two photographs of the defendant. In analyzing the legality of the search, the Court relied on Const 1963, art 1, § 11, though federal cases were examined for purposes of guidance. The *Secrest* Court ultimately determined: "There must be something incriminating about the evidence the police inadvertently come upon; indeed, some courts have added the incriminating nature must be 'immediately apparent'." *Secrest, supra,* p 528. The *Secrest* Court itself appears to have embraced the latter requirement, as it held: "We cannot find that it was immediately apparent that the photographs of individuals unknown to the police were incriminating." *Secrest, supra,* p 528. Critical to the result in *Secrest* was that at the time of the search the police had no idea what the defendant looked like, hence they could not have reasonably believed that the pictures were incriminating.

We have different facts before us in this matter. At the time the officers entered room 147 at the Wolverine Inn, they knew defendant was in custody in Ingham County and that his real name was Michael Ward, but that he used the alias Kenneth Dean Watson. Any evidence that would connect defendant with the hotel room was incriminating.

Defense counsel, in his brief, has questioned the admissibility only of people's exhibits 17-20 and 23, so those are the ones that will be addressed. People's exhibit 20 was an Avis car rental receipt made out to Kenneth D. Watson and 23 was a receipt from the Ann Arbor Holiday Inn, dated March 20, 1979, made out to K. Watson. The incriminating value of both these items was immediately apparent, as they served to link defendant to his alias and also to control of the hotel room.

People's exhibits 17 and 18 consisted of luggage and clothing. Some of the shirts contained on their collars the letters "WAT"; these were apparently laundry marks. It was reasonable to suspect that "WAT" could have been short for Watson, thus linking the items to defendant.

People's exhibits 19 was a shaving kit. Because it contained nothing bearing defendant's name or alias, and was not otherwise incriminating, its admission was erroneous. At trial, however, defense counsel elicited the fact that certain items found in the shaving kit contained surfaces which were conducive to fingerprints, but that no attempt was made to lift prints from these items. Defense counsel also mentioned his in this closing argument, claiming it raised a reasonable doubt. Thus, any error was negated by defense counsel's attempts to use the evidence to defendant's advantage. See *People v Baines,* 68 Mich App 385; 242 NW2d 784 (1976). For the foregoing reasons we find no reversible error under the *Secrest* standard.

Defendant's next claim of error relates to his motion to suppress his prior conviction record for impeachment purposes. MRE 609(a)(2). Although defendant had several such convictions, the trial court determined that evidence of only one prior conviction could be used for impeachment—a 1979 federal conviction for possession and distribution of cocaine. We find no error. While similarity of the prior conviction to the charged offense weighs against admission, the admission of evidence of a defendant's prior conviction for a crime similar or identical to the crime charged does not per se result in reversible error. *People v Carpenter,* 120 Mich App 574, 581; 327 NW2d 523 (1982); *People v Monasterski,* 105 Mich App 645, 655; 307 NW2d

394 (1981), *lv den* 411 Mich 1017 (1981). The trial judge properly exercised his discretion and did not, in our view, abuse it. *People v Jackson,* 391 Mich 323; 217 NW2d 22 (1974).

Defendant next claims that the court erred in admitting testimony concerning the street value of the cocaine, arguing that the prejudicial potential of such testimony overshadowed its probative value. MRE 403. This Court has previously held that admission of such testimony does not constitute an abuse of discretion. *People v Wimbley,* 108 Mich App 527; 310 NW2d 449 (1981); *People v Gould,* 61 Mich App 614; 233 NW2d 109 (1975). Testimony regarding the street value of a drug has been held relevant to intent to deliver. *Gould, supra,* p 624.

Defendant also argues that error was committed because officer Granger was under the impression that the average street cocaine is 15 percent pure, while the chemist testified that it is 25 percent pure, a factor which could have affected Granger's calculations. Defense counsel's own arithmetic, using an average purity of 25 percent, still puts the street value of the cocaine at over $1,000,000. In addition, this Court has taken notice that 1,000 grams of cocaine has a street value of over $1,000,-000. *People v McCarty,* 113 Mich App 464; 317 NW2d 659 (1982), *lv den* 414 Mich 958 (1982). Using that formula, the cocaine seized in the instant case would have a street value of $2.5 million dollars, much higher than the figure to which defendant objects.

Defendant's remaining arguments have previously been made to this Court without success. We have determined that the classification of cocaine on the same level with narcotic drugs for penalty purposes does not violate the rights of due process

or equal protection. *People v Harman,* 124 Mich App 93; 333 NW2d 591 (1983), *lv den* 417 Mich 1100.45 (1983); *People v Kirchoff,* 120 Mich App 617; 327 NW2d 535 (1982). Finally, this Court is not convinced that the mandatory life imprisonment for possession with intent to deliver 650 or more grams of cocaine amounts to cruel and unusual punishment. *People v Campbell,* 115 Mich App 369; 320 NW2d 381 (1982), *lv den* 417 Mich 879 (1983); *McCarty, supra.* See also *People v Puertas,* 122 Mich App 626, 630; 332 NW2d 399 (1983), *lv den* 417 Mich 1056 (1983).

Defendant's conviction and sentence are affirmed.


M. J. KELLY, P.J. *(concurring).* In *People v Harman,* 124 Mich App 93, 101; 333 NW2d 591 (1983), *lv den* 417 Mich 1100.45 (1983), I expressed the opinion that the mandatory life sentence provided for conviction of possession of 650 grams or more of a mixture containing cocaine constitutes cruel and/or unusual punishment in violation of the United States and Michigan Constitutions (US Const, Am VIII; Const 1963, art 1, § 16). I have not changed my mind, but the Supreme Court has denied leave in that case, so the lone voice crying in the wilderness has been silenced.

Although the Supreme Court is not completely clear on the effect of its denial of an application to appeal a Court of Appeals decision, *cf. Tebo v Havlik,* 418 Mich 350; 343 NW2d 181 (1984). I conclude there is little sentiment for my view.

I therefore concur in the result.