OPINION OF THE COURT
Fred W. Eggert, J.
This case presents a variation on the "plain view” doctrine: May the police seize items which they inadvertently discover from a lawful vantage point, when the items are neither contraband nor incriminating, but are useful in tracking down a fugitive?
There is virtually no authority on this subject, which is not surprising since the issue will presumably not arise except in the unusual situation where the police find evidence that initially appears to be useful only in locating a fugitive but which subsequently turns out to be probative of guilt as well. *355 If, at the time of the search, the evidence appears to be both useful in locating a fugitive, and also probative of guilt, the issue does not arise because incriminating "plain view” evidence is seizable in the first place. On the other hand, if the evidence never turns out to be probative of guilt there would presumably be no reason to receive it at trial and the issue would be academic. Therefore, this issue will presumably arise only where the incriminating nature of the evidence develops subsequent to the search.
The pertinent facts are as follows:
On August 21, 1987, three persons were killed and three other persons were wounded by gunfire in an incident at 1295 Grand Concourse, Bronx. One of the surviving victims immediately identified defendant Kevin Clark as one of the three perpetrators. The police also learned that Clark may have fled to Pennsylvania.
The police obtained a valid warrant to search Clark’s Bronx apartment for weapons, bloody clothing, handcuffs, address books, and letters. Upon execution of the warrant they recovered letters, address books, loose photographs of Clark and his wife, and phone bills containing itemized long distance calls. The photographs and phone bills were not listed in the warrant but the police seized them because they immediately appeared to be useful in locating Clark.
A few days later the police arrested Clark, who implicated the codefendants. One of the persons he implicated was defendant Henry Bolden. The police were unable to locate Bolden. They obtained a valid warrant to search his apartment for weapons. Upon execution of the warrant they recovered a broken pistol, a pillow case, a bulletproof vest, a ski mask, sunglasses, a strainer, some plastic vials, a phone answering machine, and five photo albums. I find that the answering machine and photo albums were seized because they immediately appeared to be useful in locating Bolden. However, the remaining items had no apparent connection to the homicide or anything else.
The elements of the plain view doctrine were first articulated by the Supreme Court of the United States in Coolidge v New Hampshire (403 US 443), which held that the police may seize an item when it is observed from a lawful vantage point, observation is inadvertent rather than anticipated, and the incriminating nature of the item is immediately apparent. Thus, for example, if the police are executing a valid warrant *356 and searching for items listed in the warrant, and come upon other items not listed in the warrant, and these items "immediately appear” to be incriminating under a standard of probable cause (Arizona v Hicks, 480 US 321; Texas v Brown, 460 US 730), they may seize them without obtaining a new warrant. The plain view doctrine is recognized in New York (People v Roth, 66 NY2d 688, 690; People v Basilicato, 64 NY2d 103, 115; People v Spinelli, 35 NY2d 77, 80-81).
The plain view doctrine justifies a warrantless seizure of items that would be seizable in any event under a warrant. The question remains whether the items in question are seizable. Thus, in the instant case, where the police seized items solely for their value in tracking the two fugitives rather than as contraband or evidence of guilt, these seizures would be unlawful unless such items are seizable. This would apply whether these items were listed in the warrant (as were the address books and letters recovered from Clark’s apartment) or seized under the plain view doctrine.
Under an obsolete analysis of the Fourth Amendment, contraband and fruits and instrumentalities of crime were seizable but "mere evidence” was not (Gouled v United States, 255 US 298). The "mere evidence” rule was discarded in Warden v Hayden (387 US 294).
Warden v Hayden (supra) did not specifically answer the question presented in this case, that is, whether the police may make an otherwise lawful seizure of items which, at the time of seizure, do not appear to be evidence of guilt, but which do appear useful in locating a known suspect. Moreover, "[virtually all of the cases have been concerned with probable cause that the item is evidence of crime, rather than probable cause that the item will aid in apprehension”. (2 LaFave, Search and Seizure § 6.7 [a], at 713, n 10 [2d ed].)
The Supreme Court of Missouri appears to be the only court in the Nation that has ruled on this specific issue.
In State v Collett (542 SW2d 783 [Mo]) the police entered Collett’s motel room to execute a lawful arrest warrant charging Collett with escape. They did not have a search warrant. They searched the room for Collett but found no one. Instead, in open view they found two women’s purses.
The police seized the purses, opened them, and found identification papers which established that the purses were stolen in a recent robbery. Up to that point, the police had no reason to suspect Collett of a robbery.
*357 The court held that suppression of the purses and their contents was properly denied at Collett’s trial for robbery, because "[i]t was reasonable for the officers to conclude that the purses might provide some evidence or clue as to where defendant might be located or with whom he might be found. They reasonably could anticipate that the purses might contain some incriminating evidence as to how defendant escaped or what person or persons might have participated in assisting defendant to escape.” (State v Collett, 542 SW2d 783, 787, supra.)
Thus, the court accepted the State’s interest in locating the fugitive and the State’s interest in obtaining evidence against him as parallel justifications for the plain view search (see also, United States v Philips, 593 F2d 553, cert denied sub nom. Speech v United States, 441 US 947 [address book held properly seized as both evidence of guilt and aid in locating fugitives]). Under this theory, there must, of course, still be probable cause to believe that the items seized are useful for one or both purposes (People v Secrest, 413 Mich 521, 321 NW2d 368 [photographs held improperly seized where police did not know who was in them and had no reasonable grounds to believe they would aid in apprehension]).
Furthermore, there is language in Warden v Hayden (supra) which directly supports the conclusion that in discarding the "mere evidence” rule the Supreme Court intended to permit seizure of items useful in capturing a suspect. At page 306, footnote 11, the court stated that: "[T]he prevention of crime is served at least as much by allowing the Government to identify and capture the criminal, as it is by allowing the seizure of his instrumentalities”, and at page 307 it stated that: "Thus in the case of 'mere evidence,’ probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction”.
Likewise, it has long been the public policy of this State that individual privacy must sometimes bow to the State’s interest in promptly apprehending fugitives (see, e.g., Matter of Stark v New York State Dept. of Motor Vehicles, 65 NY2d 720; People v Mealer, 57 NY2d 214, 219, cert denied 460 US 1024; People v Singleteary, 35 NY2d 528). Accordingly, I adopt the reasoning of the Supreme Court of Missouri and hold that the police lawfully seized items from the two apartments which immediately appeared to be useful in locating Clark or *358 Bolden, to wit: photographs and phone bills from Clark’s apartment and the answering machine and photo albums from Bolden’s apartment. I therefore deny suppression as to the above-mentioned items but grant suppression as to the various other items seized from Bolden’s apartment.