No. A–1265 (73–2014). MISSOURI PORTLAND CEMENT Co. *v.* CARGILL, INC. C. A. 2d Cir. Motion of respondent to vacate stay heretofore entered by MR. JUSTICE DOUGLAS on July 12, 1974, granted. MR. JUSTICE BLACKMUN took no part in the consideration or decision of this motion.

MR. JUSTICE DOUGLAS, dissenting.

Cargill, desirous of acquiring control of petitioner, made a cash offer for all of petitioner's common stock. Petitioner thereupon filed this suit in the United States District Court for the Southern District of New York to enjoin that tender offer, alleging that acquisition of control of petitioner would violate § 7 of the Clayton Act, 38 Stat. 731, as amended, 15 U. S. C. § 18. That court issued the injunction stating in a detailed opinion its view that the acquisition of stock control by Cargill raises serious antitrust issues.

The sole question here is whether Cargill's attempts to take over Missouri Portland will be enjoined, pending the outcome of a trial on the merits of Missouri Portland's claim that a merger of these two companies would violate the antitrust laws. The District Court granted such an injunction, 375 F. Supp. 249, but the Court of Appeals reversed. 498 F. 2d 851. Missouri Portland sought and received a stay of the Court of Appeals' mandate, thus reinstituting the injunction issued by the District Court. Today the Court vacates that stay.

The Court treats the case as if we were in the sensitive First Amendment field where relatively minor restraints may have a "chilling" effect on an important constitu-

tional right. But as I read the Constitution and Bill of Rights, a corporation has no constitutional right to merge, consolidate, or acquire the assets of another company. The old Court in the days of "substantive due process" built an expansive corporate Bill of Rights by reading "liberty" in the Due Process Clause of the Fifth Amendment as including the "liberty" to exploit people, our resources, and our environment. The Court trifles with the antitrust laws when it vacates a stay that only requires Cargill to wait until there is a ruling on the merits before it swallows up Missouri Portland. What the Court does today is a shocking example of the disregard of law to please the management of huge conglomerates. Denial of a stay means a decision on the merits. For once the companies and their personnel are mixed, the momentum to complete the acquisition is almost irresistible. By careless neglect we actually decide that what appears to be a monstrous violation of the law may go on unremedied.

## I

The Court of Appeals did not hold that the findings of the District Court were "clearly erroneous." The Court of Appeals considered the issue on the merits to be frivolous and only required Cargill to agree to hold the assets of Missouri Portland in a separate corporation or division so that it can be divested under any subsequent decree of the Court. But that misses the whole point, as I will make clear.

## II

Missouri Portland is the Nation's 20th largest producer of Portland cement with 2% of the national capacity and 8% in the 11-state region it serves. The District Court defined the relevant markets here as four

metropolitan areas in which Missouri Portland ranks either first or second in market share. In all of these markets the top four firms have at least 88% of the market.[1]

Cargill is a huge, privately held conglomerate with headquarters in Minneapolis. In fiscal 1973 it had sales of $5.3 billion. Cargill specializes in commodities and thus has special skills in the transportation of heavy, bulk products and in the sale of fungible products. Cement is a heavy, bulky, fungible product, but Cargill is not involved in the cement industry.

Substantial antitrust issues are raised by the proposed takeover of Missouri Portland by Cargill. The District Court found that Cargill is the most likely potential entrant into the cement industry and concluded that a significant anticompetitive effect would result from Cargill's entry via a takeover of an already dominant firm rather than by *de novo* entry or by "toehold" acquisition. Furthermore, the District Court found that the addition of Cargill's huge financial resources to Missouri Portland's already substantial assets will raise significant barriers to entry of others in the relevant markets and will tend to increase the dominance of Missouri Portland in markets which are already heavily concentrated. Finally, the District Court noted that the challenged acquisition would eliminate a potential competitor from the fringe of the market, thereby possibly resulting in an additional anticompetitive effect.

The Court of Appeals disputed all of these conclusions by the District Court. Yet the very fact that disagreement exists between the two lower courts on these points indicates the likely existence of a substantial question. If the District Court's version of the facts is the correct

---

[1] The four metropolitan markets are St. Louis, Kansas City, Memphis, and Omaha.

one, it seems that the takeover would violate the Clayton Act. See *United States* v. *Falstaff Brewing Corp.*, 410 U. S. 526 (1973); *Ford Motor Co.* v. *United States*, 405 U. S. 562 (1972); *FTC* v. *Procter & Gamble Co.*, 386 U. S. 568 (1967); *United States* v. *Penn-Olin Chemical Co.*, 378 U. S. 158 (1964); *United States* v. *El Paso Natural Gas Co.*, 376 U. S. 651 (1964).

### III

The issues raised by the petition for certiorari present a substantial question that involves a conflict between the decisions below and another Court of Appeals. In *Kennecott Copper Corp.* v. *FTC*, 467 F. 2d 67 (CA10 1972), the court held that anticompetitive effect could occur even though the acquiring and acquired corporations did not produce related products but did have related skills.[2] The court below was confronted with facts strikingly similar to those of *Kennecott* as regards the lack of related products but the presence of related skills. That court, however, candidly admitted that it was declining to follow the *Kennecott* decision. 498 F. 2d, at 860 n. 14. In our decision in *United States* v. *Falstaff Brewing Corp.*, *supra*, at 537, we left open the extent to which potential anticompetitive effect will be considered determinative in "conglomerate mergers" such as this one where entry could have been *de novo* or via "toehold" ac-

---

[2] In addition, the opinion of the court below conflicts with decisions of other Courts of Appeals on the significance of the acquiring corporation's "deep pocket." According to the court below, the facts that the acquiring corporation has great financial resources and that it intends to use these resources are not enough to show potential anticompetitive effect. But see *General Foods Corp.* v. *FTC*, 386 F. 2d 936 (CA3 1967); *United States Steel Corp.* v. *FTC*, 426 F. 2d 592 (CA6 1970); *Ecko Products Co.* v. *FTC*, 347 F. 2d 745 (CA7 1965); *Kennecott Copper Co.* v. *FTC*, 467 F. 2d 67 (CA10 1972).

quisition. Given the conflict between the Circuits on this matter, the present case presents a good vehicle in which we should consider this problem.

## IV

Cargill had acquired 18% of the common stock of Missouri Portland before the injunction issued. Now that the injunction has been lifted by the Court of Appeals and this Court, Cargill is free to acquire the controlling interest in Missouri Portland. That means that it can dictate what its subsidiary will do. We are foolhardy to assume that the litigation will then go on. Cargill in control of its subsidiary will make the subsidiary toe the line and be obedient to Cargill's wishes. The substantial antitrust issue apparent in the conflict between the Courts of Appeals will now not likely be resolved. The internal segregation of assets of the two companies is only an idle gesture.

If we fail to live under a rule of law and instead leave the field open to the uncontrolled machinations of conglomerates, Cargill will follow the infamous pattern of IT&T, uncontrolled and uncontrollable. Behind this motion to vacate the stay are very large questions of law and public policy. What is the place of antitrust law in the conglomerate field? Are conglomerates immune as some suggest? If not, what controls over them exist under present antitrust laws? These are questions that are substantial and pressing. The Circuits are in conflict; and the Court goes pellmell for an escape for this conglomerate from a real test under existing antitrust law.

I repeat, there is no constitutional right to take over other companies. Cargill should be required to accept delay as one of the risks it incurred by seeking to gain control of so dominant a firm in the cement industry

rather than being content with a "toehold" acquisition or *de novo* entry.

I would continue the stay in force until the merits of the case have been adjudicated.