PEOPLE v SUNDLING

Docket No. 83856. Submitted September 6, 1985, at Detroit. Decided July 8, 1986. Leave to appeal applied for.

Defendant, Fred L. Sundling, was charged with one count of third-degree criminal sexual conduct, involving Joe Brown, one count of second-degree criminal sexual conduct, involving Greg Callison, one count of being a sexually delinquent person and with being an habitual offender, Delta Circuit Court. The charges stemmed from evidence found during a search conducted pursuant to a search warrant. The affidavit upon which the warrant was based alleged a sexual assault committed approximately three months prior to the issuance of the warrant by defendant upon Evan Lampe. The affidavit also recited two other instances of sexual activity by defendant resulting in convictions, one occurring in 1969 and the other in 1977. The court denied defendant's motion to suppress the evidence seized in the search. Defendant was then convicted, on his plea of nolo contendere, of third-degree criminal sexual conduct, Clair J. Hoehn, J. The remaining charges were dismissed. Defendant appealed. *Held:*

1. A plea should be set aside on appeal where the trial court's misstatement of the law led the defendant to believe that his right to appeal a motion to suppress evidence would remain intact. It appeared that defendant's plea was entered upon a belief that his right to appeal the issue of the suppression of evidence would be reserved. The Court of Appeals decided to review the merits of defendant's appeal.

2. The trial court erred in denying defendant's motion to suppress. The prior convictions did not reasonably establish a modus operandi. There is no good-faith exception to the exclusionary rule in Michigan.

Reversed and remanded.

REFERENCES

Am Jur 2d, Criminal Law §§ 469-480.

Am Jur 2d, Searches and Seizures §§ 35-83.

Officer's ruse to gain entry as affecting admissibility of plain-view evidence—modern cases. 47 ALR4th 425.

Propriety in state prosecution of severance of partially valid search warrant and limitation of suppression to items seized under invalid portions of warrant. 32 ALR4th 378.

V. J. Brennan, P.J., dissented in part. He would hold that there was probable cause to issue the search warrant and that the evidence seized was properly seized pursuant to the plain-view doctrine. He would affirm.

### Opinion of the Court

1. Criminal Law — Guilty Pleas — Court Rules.

   A plea of guilty should be entirely voluntary by one competent to know the consequences, and should not be induced by fear, misapprehension, persuasion, promises, inadvertence, or ignorance; the court rule dealing with pleas of guilty and nolo contendere provides that the trial court, prior to accepting defendant's plea, shall inform the defendant that his plea waives the rights he would have at trial (GCR 1963, 785.7[1][c], now MCR 6.101[F][1][c]).

2. Criminal Law — Guilty Pleas — Appeal.

   A plea should be set aside on appeal where the trial court's misstatement of the law led the defendant to believe that his right to appeal a motion to suppress evidence would remain intact.

3. Searches and Seizures — Probable Cause.

   A citizen has a right to have a warrant to search his house issued only upon a showing of probable cause (Const 1963, art 1, § 11; MCL 780.651; MSA 28.1259[1]).

4. Searches and Seizures — Search Warrants — Affidavits — Probable Cause.

   A magistrate may consider only the information contained in the affidavit made before him in determining whether or not there is probable cause to issue a search warrant (MCL 780.653; MSA 28.1259[3]).

5. Searches and Seizures — Search Warrants — Probable Cause.

   Probable cause for the issuance of a search warrant consists of facts and circumstances which would warrant a person of reasonable prudence to believe that the items sought are in the stated place.

6. Searches and Seizures — Search Warrants — Stale Information — Probable Cause.

   The measure of a search warrant's staleness rests not on whether there is recent factual information to confirm that a crime is being committed, but whether probable cause is sufficiently fresh to allow one to presume that the items sought remain on the premises.

7. SEARCHES AND SEIZURES — ILLEGAL SEARCHES — EVIDENCE.
   Evidence which is the product of an illegal search is inadmissible
   unless the connection between the illegal search and the discov-
   ery of the evidence is so attenuated as to dissipate the taint.

8. CONSTITUTIONAL LAW — STATES — CRIMINAL LAW.
   A state may afford a defendant greater rights and protections
   under its own constitution than the United States Supreme
   Court has bestowed under the federal constitution.

9. SEARCHES AND SEIZURES — EXCLUSIONARY RULE — GOOD-FAITH
   EXCEPTION.
   Michigan does not recognize a good-faith exception to the exclu-
   sionary rule regarding illegally seized evidence.

PARTIAL CONCURRENCE AND PARTIAL DISSENT BY V. J. BRENNAN, P.J.

10. SEARCHES AND SEIZURES — PLAIN VIEW DOCTRINE.
    *Where the police justifiably intrude into an area in which a
    person has a reasonable expectation of privacy and observe
    evidence or contraband, they may seize it without a warrant
    when the conditions of the plain view doctrine are met; the
    plain view doctrine requires: (1) prior justification for the
    intrusion into the otherwise protected area, (2) obviously in-
    criminating evidence or contraband, and (3) inadvertent discov-
    ery.*

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Steven L. Pence,* Prosecuting Attorney, and *Leonard J. Malinowski,* Assistant Attorney General, for the people.

State Appellate Defender (by *Stuart B. Lev*), for defendant on appeal.

Before: V. J. BRENNAN, P.J., and WAHLS and HOOD, JJ.

HOOD, J. Defendant was charged with one count of third-degree criminal sexual conduct, involving Joe Brown, MCL 750.520d(1)(a); MSA 28.788(4)(1)(a); one count of second-degree criminal sexual conduct, involving Greg Callison, MCL 750.520c(1)(b); MSA 28.788(3)(1)(b); and one count

of being a sexually delinquent person, MCL
750.10a; MSA 28.200(1). In a supplemental infor-
mation, defendant was charged as an habitual
offender, third offense, MCL 769.11; MSA 28.1083.
Defendant pled nolo contendere to the count of
third-degree criminal sexual conduct involving Joe
Brown in exchange for the dismissal of the other
charges and now appeals as of right.

I

Prior to agreeing to the plea bargain, defendant
moved to suppress evidence seized pursuant to a
search warrant and the motion was denied. Ap-
proximately one-half hour after defendant's mo-
tion to suppress was denied, the plea bargain was
struck and defendant's plea and the factual basis
for it were placed on the record.

On appeal, defendant claims that the trial court
clearly erred in finding admissible evidence seized
pursuant to the search warrant. Before we reach
the merits of this issue we must first determine
whether the issue has been waived by virtue of
defendant's nolo contendere plea.

In *People v Alvin Johnson,* 396 Mich 424, 444;
240 NW2d 729 (1976), cert den 429 US 952 (1976),
our Supreme Court held that certain pretrial rul-
ings, including the sort at issue here, are subject
to review despite a plea of guilty:

    *Certainly it is true that those rights which
might provide a complete defense to a criminal
prosecution, those which undercut the state's in-
terest in punishing the defendant, or the state's
authority or ability to proceed with the trial may
never be waived by guilty plea.* These rights are
similar to the jurisdictional defenses in that their
effect is that there should have been no trial at all.
The test, although grounded in the constitution, is

therefore a practical one. *Thus, the defense of double jeopardy, those grounded in the due process clause, those relating to insufficient evidence to bind over at preliminary examination and failure to suppress illegally-obtained evidence without which the people could not proceed are other examples. Wherever it is found that the result of the right asserted would be to prevent the trial from taking place, we follow the lead of the United States Supreme Court and hold a guilty plea does not waive that right.* [Emphasis added.]

The doctrine espoused in *Alvin Johnson* was followed by the Court in *People v White,* 411 Mich 366, 387; 308 NW2d 128 (1981), in its decision that a claim of entrapment is not waived by a plea of guilty. More recently, the language of *Alvin Johnson* was quoted approvingly in *People v Reid,* 420 Mich 326, 333; 362 NW2d 655 (1984), where the Supreme Court approved and adopted the notion of a conditional plea which can expressly preserve for appellate review a defendant's claim that a constitutional right against unreasonable search and seizure was violated where the defendant, the prosecutor and the judge agree to the conditional plea.

Despite the language in *Alvin Johnson* this Court has continued to hold that a guilty plea "waives all defects that go to whether the government can actually prove its case, but does not waive those defects which would preclude the government from convicting defendant even if it could prove its case (*e.g.,* invalid statute, double jeopardy)." *People v Riley,* 88 Mich App 727, 730; 279 NW2d 303 (1979). See also *People v Hill,* 86 Mich 706; 273 NW2d 532 (1978); *People v Jones,* 111 Mich App 465; 314 NW2d 654 (1981). The panels reaching this conclusion have declared that the language in *Alvin Johnson* is dictum and that

the competing interests involved in the plea-waiver rule require that the dictum not be followed. *People v Riley, supra,* p 731.

We need not question the wisdom of those decisions to dispose of the present case, however, for we find that this case stands somewhere on middle ground between the complete waiver of all nonjurisdictional defects adhered to by this Court and the conditional plea adopted by the Supreme Court. *People v Reid, supra.*

A plea of guilty should be "entirely voluntary by one competent to know the consequences, and should not be induced by fear, misapprehension, persuasion, promises, inadvertence, or ignorance." *People v Coates,* 337 Mich 56, 74; 59 NW2d 83 (1953), quoting *People v Merhige,* 212 Mich 601, 612; 180 NW 418 (1920). The court rule dealing with guilty pleas provides that the trial court, prior to accepting defendant's plea, shall inform the defendant that his plea of guilty waives the rights he would have at trial. GCR 1963, 785.7(1)(c), now MCR 6.101(F)(1)(c). The rule does not mandate that the court advise a defendant that his guilty plea will waive appellate review of prior pretrial rulings by the trial court.

In the case at bar, the trial court did not advise defendant that his plea of nolo contendere would waive his right to seek review of the pretrial motion to suppress. On the contrary, it is clear from the trial court's own words that it "understood" defendant would appeal the motion to suppress after making his plea. Given that this Court has steadfastly maintained that a guilty plea waives such defects, the trial court's words in this case amounted to a misstatement of law.

This Court has found implicit, in connection with a trial court's duty pursuant to GCR 1963, 785.3 to apprise a defendant of the sentencing

consequences of a plea, that a defendant must not be allowed to suffer misfortune because of reliance upon the plea-taking court's misstatement of the law. *People v Gray,* 125 Mich App 482, 484-485; 336 NW2d 491 (1983); *People v Mitchell,* 412 Mich 853; 312 NW2d 152 (1981); *People v Maurice Jones,* 37 Mich App 283, 285; 194 NW2d 534 (1971). We believe such a policy should also prevail here where the trial court's misstatement leads a defendant to believe that his right to appeal a motion to suppress evidence remains intact.

That the present defendant retained such a belief is clear from his statement during allocution:

> I sincerely believe that my rights were violated with regard to the search warrant, but I also respect the Court's decision and especially the time and effort put forth in making its decision with regard to this issue.
>
> * * *
>
> Please be aware that I want to appeal and at that time, I will request a court-appointed attorney to be retained by the State to represent me in such an appeal.

Moreover, because the fruits of the search led to the discovery of the complainant upon whose testimony the charges against defendant are based, we find that preservation of his right to appeal the search and seizure issue was an important if not critical factor in inducing defendant to plead nolo contendere. Compare *People v Ferrigan,* 103 Mich App 214, 217-219; 302 NW2d 855 (1981), lv den 413 Mich 861 (1982).

We conclude that defendant's plea was entered into upon the belief, based upon a statement of the trial court, which was unobjected to by the people, that defendant's right to appeal the motion to

suppress was preserved. In the interest of judicial integrity, we are inclined to honor that belief and review the merits of defendant's claim.

## II

At the hearing on the motion to suppress, the prosecutor called Sergeant Robert Dietrich of the Saline Police Department, who sought the warrant, executed the search, and seized the evidence which gave rise to the charges resulting in the present plea. Dietrich testified that his decision to seek the warrant stemmed from Evan Lampe's complaint of an alleged sexual assault committed upon him by defendant approximately three months prior to the issuance of the warrant.

In addition to the incident involving Evan Lampe, Dietrich knew of two other incidents which had resulted in convictions involving criminal sexual conduct perpetrated by the defendant on male minors. One occurred in 1969, the other occurred in 1977. In the search warrant, Dietrich described the circumstances surrounding defendant's prior convictions as evidence of modus operandi and set forth the details of Evan Lampe's assault.

In the search, Dietrich seized, among other things, various pornographic material, a black recliner rocker, video equipment and video cassettes depicting the defendant in sexual relations with male minors, and envelopes containing letters. While the envelopes were not named in the affidavit, the officer testified that he seized them because they were in plain view. From the return addresses on the envelopes, Dietrich was able to retrieve the names of other possible victims in the Gladstone/Escanaba area. Dietrich relayed these names and information concerning the evidence

seized in the search to Sergeant Robert Farrell in Escanaba. Farrell proceeded to investigate and discovered the complainants whose allegations gave rise to the present charges against defendant. Prior to his contact with Dietrich, Farrell knew of no criminal activity involving defendant in the Escanaba community. We note that defendant was never charged with the assault against Evan Lampe.

The trial court questioned the validity of the affidavit upon which the search warrant was based because the police officer did not have personal knowledge of the circumstances surrounding the defendant's prior convictions. The trial court also questioned whether the search warrant was based on probable cause, given the staleness of the information and the unlikelihood that defendant's prior convictions in 1969 and 1977 could reasonably establish a bona fide modus operandi. However, the trial court found that the police officer had seized the items in good faith, believing that he was acting pursuant to a valid warrant. Accordingly, defendant's motion to suppress the evidence was denied.

We conclude this holding of the trial court is clearly erroneous.

In Michigan, a citizen has both a constitutional and statutory right to have a warrant to search his house issued only upon a showing of probable cause. Const 1963, art 1, § 11; MCL 780.651; MSA 28.1259(1). Defendant claims that the search warrant involved here was issued in violation of his right under the foregoing provisions because the underlying information in support of the warrant was stale. We agree.

A magistrate can consider only the information in the affidavit made before him in determining whether or not probable cause exists to issue a

search warrant. *People v Coleman,* 100 Mich App
587, 590; 300 NW2d 329 (1980), lv den 411 Mich
884 (1981); MCL 780.653; MSA 28.1259(3); *Aquilar
v Texas,* 378 US 108, 109, n 1; 84 S Ct 1509; 12 L
Ed 2d 723 (1964). Probable cause exists when the
facts and circumstances would warrant a person of
reasonable prudence to believe that the evidence
of a crime or contraband sought are in the stated
place. See MCL 780.652; MSA 28.1259(2); *People v
David,* 119 Mich App 289, 292-293; 326 NW2d 485
(1982), lv den 417 Mich 858 (1983); *People v Dins-
more,* 103 Mich App 660, 674; 303 NW2d 857
(1981), lv den 411 Mich 1071 (1981). The magis-
trate's determination of probable cause is entitled
to great deference and will be upheld absent an
abuse of discretion. *People v David, supra; People
v Dinsmore, supra.*

"The passage of time is a valid consideration in
deciding whether probable cause exists." *People v
David, supra,* p 295; *People v Gillam,* 93 Mich App
548, 552; 286 NW2d 890 (1979). "There is no hard
and fast rule as to how much time may intervene
between the obtaining of the facts and the making
of the affidavit upon which the search warrant is
based." *People v Mushlock,* 226 Mich 600, 602; 198
NW 203 (1924), quoted in *People v Gillam, supra.*
If a pattern of violations is established by a history
of criminal activity, the lapse of time is less criti-
cal, especially where information has been re-
ceived which confirms the basic information sup-
porting the warrant. See *People v Gillam, supra;
United States v Townsend,* 394 F Supp 736 (ED
Mich, 1975); *United States v Harris,* 403 US 573;
91 S Ct 2075; 29 L Ed 2d 723 (1971). "In the final
analysis, the measure of a search warrant's stale-
ness rests not on whether there is recent informa-
tion to confirm that a crime is being committed,
but whether probable cause is sufficiently fresh to

presume that the sought items remain on the premises." *People v Gillam, supra,* p 553; *People v Townsend, supra,* p 745.

The warrant in the case at bar was issued on April 16, 1984, based upon defendant's convictions in 1969 and 1977 and a sexual assault on Evan Lampe allegedly occurring four months earlier on December 16, 1983. The officer seeking the warrant testified that the circumstances surrounding defendant's previous convictions, not the statements of Evan Lampe, led him to believe that the photographs and address books would be found on the premises of defendant's residence. We further note that, while the officer testified that Lampe's statements led him to believe that the video equipment and tapes would also be found at defendant's home, the statements of Lampe described in the affidavit are devoid of any reference to these items.[1] The prosecution has failed to argue the validity of the search warrant on appeal, confining its brief to the issue of whether appellate review of the motion to suppress was waived by defendant's plea of nolo contendere. We note that arguably the affidavit was sufficient to support a finding of probable cause to search for the black recliner rocker connected with the Evan Lampe assault. However, even if we were to find the intrusion into defendant's home lawful on this basis, the subsequent seizure of the other items at defendant's home has not been justified to our satisfaction.[2]

[1] A search warrant may be issued to search for and seize only property which is contraband or evidence of a crime. See generally MCL 780.652; MSA 28.1259(2). The only portion of the affidavit which could possibly support the officer's belief that video equipment and tapes would be found at defendant's home was the officer's statement that defendant had reported a theft of those items from his home in late 1983. We find this statement insufficient to support a fair probability that these non-inherently illegal items constituted evidence of a crime or contraband.

[2] In particular, we reject the plain view doctrine as applicable to

Given that our review of the magistrate's determination of probable cause is dependent upon the adequacy of the affidavit, we conclude that the search warrant was defective for lack of probable cause sufficiently fresh to presume that the items other than the black recliner rocker were on the premises. We cannot conclude that defendant's fifteen- and seven-year-old convictions involving illegal sexual conduct established a pattern of violations or a modus operandi sufficient to transform otherwise stale information into "fresh" probable cause.

This case is distinguishable from *People v Osborn,* 122 Mich App 63; 329 NW2d 533 (1982), where a warrant issued for the seizure of photographs was based on information that was forty-five days old. In that case the defendant had been repeatedly sexually exploiting his victim for at least a year and a half before the warrant was issued and the victim had personal knowledge of the existence and location of photographs taken of her during the sexual assaults. The *Osborn* panel found that this information was enough to allow the magistrate to conclude that the defendant would not quickly dispose of the pictures but would retain them for his own future enjoyment and established probable cause "sufficiently fresh to presume that the photographs were in defendant's residence when the warrant was issued." 122 Mich 67.

In the case at bar, Lampe's statements in the affidavit supported only the seizure of the black reclining rocker. Unlike the victim's statements in

this case given our holding that the executing officer's knowledge of defendant's previous convictions did not constitute probable cause to believe that the items seized, specifically the envelopes and videotaping equipment, were evidence or implements of a crime. See *People v Bloyd,* 96 Mich App 264; 292 NW2d 546 (1980), aff'd 416 Mich 538; 331 NW2d 447 (1982).

*Osborn,* Lampe's statements in the affidavit here in no way confirmed the officer's hunch that incriminating evidence of address books, photographs and videotapes could be found at defendant's residence. Accordingly we find that the magistrate's determination of probable cause as to these items cannot be upheld.

Under both the Michigan and United States Constitutions, illegally seized evidence generally must be suppressed. *People v Plantefaber,* 410 Mich 594; 302 NW2d 557 (1981); *People v David, supra,* p 297; *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961). Further, evidence which is derived from an illegal search is inadmissible as "fruit of the poisonous tree" unless the connection between the illegal search and the discovery of the challenged evidence is so attenuated as to dissipate the taint. *People v Dezek,* 107 Mich App 78, 90; 308 NW2d 652 (1981); *Wong Sun v United States,* 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963). Our holding that the search warrant here was defective for lack of probable cause renders the officer's search of defendant's house illegal and all evidence obtained in and derived from the search must be suppressed. The trial court, while seriously questioning the validity of the search warrant, nevertheless admitted the evidence obtained from the search under the "good faith" exception to the exclusionary rule. This was error.

In the landmark case *United States v Leon,* 468 US 897; 104 S Ct 3405; 82 L Ed 2d 677 (1984), the United States Supreme Court created what is now known as the "good-faith" exception to the exclusionary rule. This exception precludes the suppression of evidence obtained in an illegal search where the officer has acted in good faith and on reasonable reliance upon a magistrate's determi-

nation of probable cause and the technical suffi-
ciency of a search warrant. 418 US 922. The
officer's reliance must be "objectively reasonable"
and suppression remains an appropriate remedy
where: (1) the issuing magistrate was misled by
the information in the affidavit and the affiant
knew the information was false or would have
known it was false but for his reckless disregard of
the truth; (2) the issuing magistrate totally aban-
dons his judicial role by issuing an open-ended
warrant; (3) the warrant is based on an affidavit so
lacking in probable cause that official belief in the
existence of probable cause is rendered entirely
unreasonable; or (4) the warrant is so facially
deficient in failing to particularize the place to be
searched, the items to be seized or otherwise, that
the executing officer cannot reasonably presume it
to be valid. *Id.,* pp 922-923.

The Michigan courts have yet to adopt a similar
exception to the exclusionary rule under the Mich-
igan Constitution. Further, it is well established
that a state can afford a defendant greater rights
and protections under its own constitution than
the United States Supreme Court has bestowed
under the federal constitution, although the con-
verse is not true. See *People v Smith,* 420 Mich 1,
7, n 2; 360 NW2d 841 (1984).

Prior to the United States Supreme Court's
decision in *Leon, supra,* our Supreme Court and
this Court had the opportunity to adopt a good-
faith exception to the exclusionary rule and de-
clined to do so. *People v Bloyd,* 416 Mich 538, 556;
331 NW2d 447 (1982); *People v David, supra.* In
*People v David,* this Court articulated its belief:

> Such a holding would, in effect, remove the
> probable cause requirement from the Fourth
> Amendment. A "good-faith" exception to the ex-

clusionary rule would insulate the magistrate's decision to grant a search warrant from appellate review. In every case where a constitutionally infirm search warrant was issued, the prosecution could reasonably claim that the police acted in good faith. In effect, the constitutional language that all warrants be issued only on a showing of probable cause would become a nullity.

Furthermore, adoption of a good-faith standard would remove the incentive for police officers to find out what sort of police conduct constitutes an unreasonable invasion of privacy. On a police force, efficiency in obtaining convictions is rewarded so recognition of a good-faith exception to the warrant requirement would encourage police officers to remain ignorant of the law in order to garner more evidence and obtain more convictions. The end result, increased illegal police activity, is the very problem that the exclusionary rule is designed to avert. [119 Mich 297-298.]

Even with the exceptions to the exception, this Court is unpersuaded that with the adoption of the good-faith exception, the above described fears will not turn into a reality. See Justice Brennan's dissent in *United States v Leon,* 468 US 952-959.

We further note that the compelling reason in *Leon* for adopting the good-faith exception appears to be the substantial costs society has been asked to pay either in setting guilty persons free or impeding the orderly functioning of trials as a result of relevant evidence being excluded in cases where the police have made only an "objectively reasonable" mistake concerning the constitutionality of their actions. 468 US 906-908. However, as Justice Brennan points out in his dissent, the majority is without statistics to support this claim. 468 US 949-951. Indeed, the statistics cited by the majority show that the costs of the exclusionary rule demonstrated by dropped prosecutions and

lost convictions is really quite low. This fact caused the Mississippi Supreme Court in *Stringer v State,* (unpublished opinion, decided February 27, 1985 [Docket No. 54805]), to comment that these statistics have a devastating impact on the logic of *Leon* and that the good-faith exception to the exclusionary rule reflects more "a shift in judicial/political ideology than a judicial response to demonstrable and felt societal needs." Accordingly, the Mississippi Supreme Court asked, "If it ain't broke, why fix it?"

We too question the utility of the good-faith exception in light of the dearth of evidence indicating that application of the exclusionary rule substantially hinders effective and efficient law enforcement.

Our Supreme Court adopted the exclusionary rule as the remedy for violations of the Michigan constitutional right to be free from unreasonable searches and seizures long before such a remedy was deemed required under the federal constitution. See *People v Marxhausen,* 204 Mich 559; 171 NW 557 (1919), and *Mapp v Ohio, supra.* We maintain that its existence in its present form is a necessary ingredient to the preservation of the right under the Michigan Constitution to be free of unreasonable government intrusions. Therefore, we decline to follow *Leon.*

Accordingly, the trial court's decision to admit the evidence seized in the search of defendant's home is reversed. Defendant is entitled to withdraw his plea. See *People v Reid, supra,* p 337.

Reversed and remanded.

V. J. Brennan, P.J. *(dissenting in part.)* I respectfully dissent here.

I concur with the majority on the issue of review of the search and seizure question after a plea of

nolo contendere, that under the facts here the appeal of that question was not waived. However, I would hold that the evidence seized was admissible.

The one question that the validity of the search rests on is whether there has been a showing in the affidavit of the existence of probable cause.

As does the majority, I, too, would find that sufficient probable cause existed at the time of the issuance.

Because the search warrant was valid, all evidence seized, whether described in the affidavit or in open view, was admissible. The officer's knowledge of past activities and modus operandi would be permissibly used in the search process. The plain view doctrine, I find, applies to the evidence here seized.

> The Fourth Amendment to the U.S. Constitution and Article 1, § 11 of the Michigan Constitution, have generally been held to prohibit searches and seizures conducted without a warrant.
>
> There are exceptions, however, one of which is when the item is in "plain view". *People v Whalen,* 390 Mich 672, 677; 213 NW2d 116 (1973); *Coolidge v New Hampshire,* 403 US 443; 91 S Ct 2022; 29 L Ed 2d 564 (1971). When the police justifiably intrude into an area where a person has a reasonable expectation of privacy and observe evidence or contraband, they may seize it without a warrant if the conditions of the plain view doctrine as set forth in *Coolidge* are present. *People v Myshock,* 116 Mich App 72, 75; 321 NW2d 849 (1982). The requirements of the plain view doctrine enumerated in *Myshock* are:
>
> "(1) prior justification for intrusion into the otherwise protected area; (2) the evidence is obviously incriminatory or contraband; and (3) the discovery of the evidence is inadvertent." *Id.* pp 75-76. [*People v Alfafara,* 140 Mich App 551, 556; 364 NW2d 743 (1985).]

See also *People v Ward,* 133 Mich App 344, 353; 351 NW2d 208 (1984), and *People v Secrest,* 413 Mich 521; 321 NW2d 368 (1982), reh den 414 Mich 1102 (1982).

Police officers need only probable cause to believe that the object within their plain view is evidence or an implement of a crime to satisfy a condition of the plain view doctrine. Officer Dietrich's knowledge of defendant's modus operandi at the time of the search was sufficient to establish this probable cause.

I would affirm.