PEOPLE v QUEENAN

Docket Nos. 86202, 86203. Submitted November 12, 1986, at Lansing. Decided February 18, 1987. Leave to appeal applied for.

Matthew D. Queenan and Howard D. Queenan, Jr., were each convicted of Michigan sales tax evasion and possession of marijuana with intent to deliver following a bench trial in Washtenaw Circuit Court and were sentenced, William F. Ager, J. Defendants filed separate appeals, which were consolidated.

The Court of Appeals *held:*

1. Defendants' motion to suppress evidence because the affidavits in support of the search warrants failed to provide sufficient information from which a magistrate could find probable cause to believe that defendants had wilfully and knowingly violated Michigan tax laws or that the evidence sought would be found in the places searched was properly denied by the trial court. The affidavits contained sufficient evidence to support the search warrants.

2. Defendants' argument that evidence seized under later search warrants must be suppressed because the later warrants were issued based upon evidence seized under earlier, invalid search warrants is rejected. The original search warrants were valid.

3. There is sufficient evidence to support defendants' convictions.

4. The trial court did not abuse its discretion in imposing the sentences handed down. The sentences do not shock the judicial conscience.

Affirmed.

1. Searches and Seizures — Probable Cause.

A warrant to search a citizen's home may not be issued absent probable cause; probable cause exists when the facts and cir-

References

Am Jur 2d, Evidence § 1080 *et seq.*

Am Jur 2d, Sales and Use Taxes §§ 47, 48.

Am Jur 2d, Searches and Seizures §§ 41-44.

See the annotations in the Index to Annotations under Evidence; Search and Seizure; Taxation.

cumstances would lead a person of reasonable prudence to believe that the evidence of a crime or contraband sought are in the place to be searched.

2. SEARCHES AND SEIZURES — PROBABLE CAUSE.
   A magistrate's determination of probable cause should be accorded deference and upheld absent an abuse of discretion.

3. CRIMINAL LAW — EVIDENCE — SUFFICIENCY OF EVIDENCE.
   Evidence is sufficient to sustain a defendant's conviction if, viewed in the light most favorable to the prosecution, it would enable a rational trier of fact to conclude that the essential elements of the crime were proven beyond a reasonable doubt.

4. TAXATION — SALES TAX — MARIJUANA.
   Retail sales of marijuana are covered by the General Sales Tax Act (MCL 205.51 et seq.; MSA 7.521 et seq.).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William F. Delhey,* Prosecuting Attorney, and *Jack F. Simms, Jr.,* Assistant Prosecuting Attorney, for the people.

*Neil H. Fink,* for Howard D. Queenen, Jr.

*Mark J. Kriger,* for Matthew D. Queenan.

Before: R. B. BURNS, P.J., and GRIBBS and A. T. DAVIS,* JJ.

GRIBBS, J. After a bench trial held on November 5, 1984, in Washtenaw Circuit Court, defendants Matthew and Howard Queenan were convicted of Michigan sales tax evasion, MCL 205.51 *et seq.* and MCL 205.27; MSA 7.521 *et seq.* and MSA 7.657(27), and of possession of marijuana with intent to deliver, MCL 333.7401(1), (2)(c); MSA 14.15(7401)(1), (2)(c). On July 3, 1985, both defendants were sentenced to three to five years in prison on the sales tax evasion convictions and to two years and four months to four years in prison

---

* Circuit judge, sitting on the Court of Appeals by assignment.

on the possession of marijuana convictions. Defendants appeal as of right; their cases have been consolidated by order of this Court.

At trial, Officer Gary Radtke of the Michigan State Police testified that, on January 11, 1984, he went to 10001 Joslin Lake Road in Washtenaw County to execute a search warrant. Howard Queenan, his wife Pamela, and a baby boy were at that address. Radtke seized tax records there. At the time, he also observed scales, a quantity of United States currency and approximately ten pounds of marijuana. A second search warrant was issued for the marijuana, and that was seized. The documents seized from Howard Queenan's house indicated that Queenan had sold large quantities of marijuana to a number of customers. Radtke indicated that the sales were of different quantities, some of which would indicate personal use and some of which were too large to be for personal use. According to him, a larger number of the sales were probably wholesale.

Detective Michael Oltersdorf of the Washtenaw County Sheriff's Department testified that, on the morning of January 11, 1984, he executed a search warrant for tax records at 10396 Hadley Road, Linden Township, Washtenaw County. Matthew Queenan and someone named Laurie were at that location. Tax records were seized pursuant to the warrant and turned over to the Treasury Department. Oltersdorf observed suspected marijuana, which was bagged and packaged, scales, firearms and large amounts of United States and Canadian currency in plain view. That material was not seized immediately. Another search warrant was obtained, and approximately fifty pounds of marijuana was seized pursuant to the second warrant.

Gary Sebastian, a special agent for the Michigan Department of Treasury, testified that, on the

morning of January 11, 1984, he was in the process of executing a warrant at the Joslin Lake Road address. Defendants were charged with sales tax evasion based on records seized from that location, Hadley Road, and Bush Road. The records included a ledger showing inventory coming in, etc. Sebastian testified that a wholesaler does not have to pay sales tax if he sells to retailers who are licensed and has filed for an exemption. It was stipulated that neither defendant had such an exemption. The sales records seized at each defendant's address referred to the other defendant. The Treasury Department determined the amount of sales tax evasion after conducting a lengthy and detailed study of the ledger and records involved. The department concluded that defendants had failed to report sales and gross proceeds at retail in excess of $2,168,000. The smallest quantity found in any of the ledger sheets was one-half pound. The ledger indicated prices of $530 per pound, $700 per pound and $470 per pound. The only half pound was priced at $1,850 per pound; the smaller quantities were very expensive goods.

Defendants were found guilty of possession of marijuana and sales tax evasion.

On appeal, defendants raise four issues. First, they contend that the trial court erred in denying defendants' motion to suppress evidence because the affidavits in support of the search warrants failed to provide sufficient information from which a magistrate could find probable cause to believe that defendants had wilfully and knowingly violated Michigan tax laws or that the evidence sought would be found in the places searched.

On January 10, 1984, agents of the State of Michigan obtained warrants to search six locations, including three dwelling houses owned by Howard Queenan. The physical evidence admitted

at trial was obtained in searches of those dwelling houses. The search warrants were supported by identical affidavits, which read, in pertinent part:

The facts establishing probable cause or the grounds for search are:

(1). Affiant Detective Lieutenant Gary R. Radtke has been employed by the Department of Michigan State Police for approximately eighteen (18) years. Affiant Radtke has been assigned to the criminal investigation section Livonia Narcotics Unit for the past 5 years. In this capacity affiant Radtke has been assigned to investigate major narcotic traffic in the Washtenaw County area.

(2). Affiant Gary Sebastian is employed with the Michigan Department of Treasury, Special Investigation Division, as a special agent and has been engaged in the auditing and investigating of business and/or individuals for compliance with applicable state tax laws for approximately fourteen (14) years, specifically narcotic related business for the last eleven (11) years.

(3). Starting in May of 1983 and continuing until the present affiant Radtke has received information from James Gochis, a convicted narcotics dealer who is now a federal prisoner. James Gochis told affiant Radtke that he was associated with one Howard D. Queenan in 1980 and 1981.

(4). James Gochis further informed affiant Radtke that he had been involved in more than twenty (20) narcotics transactions in 1980 wherein he, Gochis, would transport several hundred pounds of marijuana from Florida to Michigan and from Ann Arbor, Michigan, to other places in Michigan and Ohio for Howard D. Queenan.

(5). James Gochis further informed affiant Radtke that he would deliver several hundred pounds per car load of marijuana from Florida to Howard D. Queenan in Washtenaw County and that he would be paid approximately $1,000.00 plus expenses for each of approximately 10 trips from Florida to Washtenaw County, Michigan.

James Gochis further informed affiant Radtke that the other narcotics transactions involved the transportation of large amounts of marijuana from the Washtenaw County area to other locations in Michigan and Ohio and that Gochis would be paid by Howard D. Queenan for each of these transactions.

(6). James Gochis further informed affiant Radtke that Howard D. Queenan had told him (Gochis) that he would earn over a million dollars in 1980 on the marijuana transactions.

(7). James Gochis further informed affiant Radtke that the last narcotics transaction between Howard D. Queenan and himself (Gochis) occurred in 1981.

(8). After the early conversations with James Gochis, affiant Radtke contacted affiant Gary Sebastian in August of 1983 requesting assistance in an investigation with regard to narcotics trafficking and suspected violations of the Michigan State Tax Statutes.

(9). On or about October 4, 1983 affiant Gary Sebastian was assigned to do an investigation of Howard D. Queenan with regard to alleged violations of the Michigan State Tax Statutes.

(10). Affiant Gary Sebastian, acting in his official capacity, has access to the files of all tax divisions of the Michigan Department of Treasury.

(11). Affiant Sebastian and others have conducted an investigation to determine compliance with the Michigan Revenue Act, MCLA 205.1 to 205.30; the Michigan Sales Tax Act, MCLA 205.51 to 205.78; the Michigan Income Tax Act, MCLA 206.1 to 206.532, and the Michigan Single Business Tax Act, MCLA 208.1 to 208.145 by the aforementioned Howard D. Queenan and one Edward M. Bomar, a business associate of Howard D. Queenan.

(12). That affiant Sebastian has determined through his investigation that Howard D. Queenan resides at 10001 Joslin Lake Road in the Township of Lyndon, Washtenaw County, Michigan.

(13). That affiant Sebastian has determined

through his investigation that Edward M. Bomar resides at 1156 East Dallas in the City of Madison Heights, Oakland County, Michigan.

(14). That affiant Sebastian has determined through his investigation that Howard D. Queenan is the registered owner of four (4) motor vehicles which include a 1983 Volvo, a 1980 Corvette, a pickup truck and another automobile.

(15). That affiant Sebastian has determined through his investigation that Howard D. Queenan has a recorded property interest in approximately twelve (12) parcels of real estate in Washtenaw County, Michigan, whose total assessed evaluation exceeds $165,000.00.

(16). That affiant Sebastian has determined through his investigation that Howard D. Queenan has a recorded property interest in at least 3 dwelling houses located in Washtenaw County, Michigan.

(17). That affiant Sebastian has determined through his investigation that the addresses of the aforesaid three dwelling houses owned by Howard D. Queenan are as follows: 10001 Joslin Lake Road, Lyndon Township, Washtenaw County, Michigan; 5821 Bush Road, Sylvan Township, Washtenaw County, Michigan; 10396 Hadley Road, Lyndon Township, Washtenaw County, Michigan.

(18). That affiant Sebastian has determined through his investigation that Howard D. Queenan paid approximately $7,300.00 in real estate taxes and fees on his Washtenw County property holdings on or about August 2, 1983.

(19). That affiant Sebastian has determined through his investigation that Howard D. Queenan last filed a State of Michigan Personal Income Tax Return in the year 1980, listing an adjusted gross income of approximately $30,656.00.

(20). That affiant Sebastian has determined through his investigation that Howard D. Queenan has not filed a State of Michigan, Personal Income Tax Return for the years 1981 and 1982 and the aforesaid Howard D. Queenan has failed to file any

estimated personal income tax returns for the years 1981, 1982, or 1983.

(21). That affiant Sebastian has determined through his investigation that Howard D. Queenan and Edward M. Bomar are the owners and/or operators of Security Door and Lock Company whose offices and/or business addresses are 2910 North Woodward Avenue in the City of Royal Oak, County of Oakland, Michigan and 920 North Main Street in the City of Ann Arbor, Washtenaw County, Michigan.

(22). That affiant Sebastian has determined through his investigation that the Security Door and Lock Company has never filed a State of Michigan Single Business Tax Return.

(23). That affiant Sebastian has determined through his investigation that Edward M. Bomar is the registered owner of three (3) motor vehicles which include a 1982 Mercury and another automobile and a van.

(24). That affiant has determined through his investigation that there is no record of Edward M. Bomar having filed a State of Michigan Personal Income Tax Return between the years 1976 and 1982 inclusive.

(25). Regulation R205.23 of the Michigan General Sales and Use Tax Rules and Regulations of the Michigan Department of Treasury provide in part:

That "[i]t is the duty of every person engaging in any business subject to the tax to keep and preserve suitable and adequate records of his business to enable such person, as well as the State, to determine the correct amount of the tax for which he is liable."

That "[r]ecords and files shall be kept on the premises of the place of business and maintained in a legible manner."

(26). That the Michigan Income Tax Act-MCLA 206.455 [MSA 7.557(1455)] provides:

"Every person shall keep such records, books, and accounts as may be necessary to determine the amount of tax for which it is liable under the

provisions of this act and as the department may require for a period of 6 years."

(27). The Michigan Single Business Tax Act-MCLA [2]08.99 [MSA 7.558(99)] provides:

"A person shall keep such records, books, and accounts as may be necessary to determine the amount of tax [for] which the person is liable under this act and as the department requires for 6 years."

(28). The Michigan Revenue Act-MCLA 205.28(3) [MSA 7.657(28)(3)] provides:

"A person liable for any tax administered under this act shall keep accurate and complete records necessary for the proper determination of tax liability, as required by law or rule of the department."

(29). That the Michigan Revenue Act-MCLA 205.27(1)(a) and (2) [MSA 7.657(27)(1)(a) and (2)] provides:

"1. In the performance of the duties and responsibilities required by [a] statute, the administration [of] which is subject to this act, a person shall not:

"(a) Fail or refuse to make [a] return within the time specified or make a false or fraudulent return or false statement in a return.

"2. A person who violates a provision of this section with intent to defraud or [to] evade or assist in defrauding or evading the payment of a tax or part of a tax, is guilty of a felony, punishable by a fine of not more than $5,000.00[,] or imprisonment for not more than 5 years, or both."

(30). That the aforementioned records are necessary evidence for prosecution of the aforementioned individuals, partnerships, corporations, and/or businesses for filing of false or fraudulent tax returns with the intent to defraud the State of Michigan and/or for failure to file tax returns with intent to defraud the State of Michigan or evade the payment of tax is contrary to statutes made and provided.

At trial, it was undisputed that all the physical

evidence admitted at trial was the product of the search warrants for the Joslin and Hadley Road addresses.

The trial court ruled as follows on the motion to suppress:

> We must first take up the question as to whether or not there was sufficient information to justify the Examining Magistrate in reasonably believing that the elements were present in the commission of an offense. There must be some showing where a tax return was not filed by the taxpayer; that the taxpayer was a resident of Michigan; and that the taxpayer failed to file a tax return that he was required to do.
>
> And then, if we find this, we must go on to the next question, as to whether or not the Magistrate acted reasonably in his decision.
>
> We don't have a situation where the burden rests upon the People, such as we do in a search without a Warrant, for the People to justify the search without a Warrant.
>
> So we get down to where the question in this case, as far as this Court is concerned, is what is reasonable or what is unreasonable or what would be considered unreasonable.
>
> No question that the Supreme Court of the United States has told us on numerous occasions that unreasonableness cannot be stated in rigid and absolute terms.
>
> I would refer to *Harris v U S,* 331 US 145 [67 S Ct 1098; 91 L Ed 1399 (1947)], and a host of cases afterwards, which say this is a sort of loose definition as to what amounts to reasonableness and/or unreasonableness. Because the purpose of requiring, in most cases, the police officers to go before a Magistrate to obtain a Warrant, is to guard a person's right under the Fourth Amendment, in that there will be a hearing before a neutral and detached Magistrate. And we certainly have that situation here.
>
> We have Judge Fink sitting as a neutral person

and to decide whether the information has been given to him, which he feels would justify the issuance of a Search Warrant.

And I think we did discuss, at the onset, part of the question that a Search Warrant may be issued against one not suspected of a crime. And I think I did mention previously, *Zurcher* [*v Stanford Daily*], 436 US 547 [98 S Ct 1970; 56 L Ed 2d 525 (1978)], and I believe we have some Michigan cases to go along with the Supreme Court decision.

What I am saying, is that we must consider the circumstances as a whole. The issue is, first, whether it was sufficient to make a reasonable determination that the Defendant was committing the crime that is setting forth the three elements, as I believe Counsel for Defendant is mentioning in his brief at Page 12, and then whether the affidavit in support of the Search Warrant, provides probable cause; that not only did the Defendant [sic] claim certain tax violations, but that the items sought would be located in the places searched, the place against which the Search Warrant is issued.

As to whether or not the Magistrate was reasonable in his determination regarding a commission of a crime. There was testimony and there was information given that the Defendants owned considerable property. It was claimed by Defendant's Counsel, that if this would be the basis of the Warrants, that the Search Warrants could be issued against anybody. The Court does not feel this is so. We have a situation where a person has amassed a considerable amount of property over a period of time, and there is no showing of income sufficient to acquire that property. The Court feels, in many circumstances, that this would be grounds to believe that tax laws had been violated.

We don't have situations, usually, where Mr. Sexsmith or Counsel for the Defendant or the Court would have amassed a great deal of property way over and above what would be reasonable under the income that was shown in the last report filed by each one of the Defendants in this case.

The Court feels that this would give cause for a reasonable person to believe that the income was not being reported properly, either personal or business tax reports. There was information given that the tax return was not filed.

As to residency, this is not an important argument to the Court. It was alleged that the Defendant resided at a certain address; the Court feels that this was sufficient, and Judge Fink finding, as a reasonable person, that he resided in this State.

The third element that Counsel for Defendant has mentioned in his brief, Page 12 and 13 is, that there must be a showing that the failure to file tax returns is in a situation where the person had an intent to defraud or to evade payment of the tax return. This must be given a reasonable interpretation and I believe that the same interpretation that this Court gave element one, would apply to element three. That is, that when a person has a great deal of property and they don't give any showing as to how they got the property, they would have to have some type of an income someplace and that there would be reason to believe that they might not file a return and wish to evade payment of tax.

The next question that the Court must go to, is whether or not there was reason to believe that the records would be found, and I won't go through the entire list of matters set forth in the Warrant, the tax returns, business and personal records, ledgers and so on, and whether the Examining Magistrate was reasonable in finding that the places with which the Search Warrant was issued might reasonably contain the items desired which would be connected with the offense.

And suffice it to say, right at the beginning, the Court's personal records, ledgers, account books, and so on, would have something to do with the filing of the tax reports.

Again, the Court must examine the totality of the situation. One question that was brought up was whether it would be proper to have a Search Warrant issued against a residence of a person

when we are looking for business records. I think previous cases have handled this and I believe it would be reasonable for Judge Fink to believe that records, even though they involved businesses, would be kept in residences when you look at all of the types of things that the Search Warrant set forth. Cancelled checks, passbooks, and safety deposit keys, things of this nature; titles pertaining to motor vehicles, airplanes, water craft, personal documents. These are the types of things that would be found not only in a business place but also in a place of residence. And the Court is of the opinion that it was proper; that Judge Fink was reasonable in issuing the Search Warrant against a residence. I don't think you can put a dividing line right down the center and say that business places can be searched and residence places can't.

Now I would point out it is only necessary that a probability that criminal activity be found by the Magistrate in order for him to issue a Search Warrant. It's certainly a very different requirement than would be in the case when a search is made without a Warrant or to bind the matter over for trial by a Magistrate or anything of this nature.

The test is less than the standards requiring the binding over the matter for trial or for that matter for introducing evidence at trial. And I think the *McCray v Illinois,* I think that was set forth in the People's brief, 386 US 300 [87 S Ct 1056; 18 L Ed 2d 62 (1967)], follows along those lines.

This is one of the few times that they seemed to apply common sense standards. They set forth what they suggest in the common sense reading of the affidavit requesting Search Warrants.

And this Court is of the opinion that we do have a common sense reading of the Search Warrants in the present case; that there was a probability that the places mentioned would contain records or evidence connected with the offenses which it was complained at least one of the Defendants had committed in this case.

What the Court is finding, that it was reasonable for the Magistrate to conclude that the business records involved in this claimed crime would be located at the residences which were mentioned in the Search Warrant, and I believe this case comes within *United States v McMannis,* a 1983 case, 719 Federal Second 1395.

It must be remembered that the Supreme Court cases of the United States and the Supreme Court cases of the State of Michigan, have held that the reviewing Court, the trial Court in this case, must pay great efforts to the determining of probable cause, whether it's calling for a Search Warrant or a preliminary, it must give a great deference to the Examining Magistrate. And the Courts have held that the reviewing Court should, in all circumstances, sustain the Magistrate's determination of probable cause as long as there is a basis for this finding.

There is some claim that one of the Defendants' names had not been mentioned in the affidavit, that it was just a situation where one person was a tenant and another person owned the home.

Again, was the Examining Magistrate reasonable or did he exercise common sense in finding that the business records and so forth could be found in these places, even though the person mentioned in the Search Warrant didn't actually live at that place, at that time.

This Court, again, would find from all of the matters set forth in the affidavit for the Search Warrant, that the Examining Magistrate did exercise common sense and was justified in making the finding that there was some probability that the business records and so forth could be found at this place.

Some claim that the affidavit was stale. And the Court does not feel that that was a situation here, that Michigan cases have considered like this, and I believe the People claim the *McMannis* case would cover this, and this Court would find that the information was not stale because the *McMannis* case would cover this.

There is no question in this Court's mind that the Defendants have good arguments in their claim of the Search Warrant, it is a close question.

This Court finds that the search was valid; that the Examining Magistrate was justified; that under all of the laws of the State of Michigan and the United States, they were justified in issuing the Search Warrant; that the Search Warrant was carried out properly by the officers.

Therefore, the Court would deny Defendant's Motion to Suppress.

The Legislature has set forth certain requirements for affidavits supporting search warrants at MCL 780.653; MSA 28. 1259(3). In *People v Sherbine,* 421 Mich 502; 364 NW2d 658 (1984), the Supreme Court noted:

The Legislature, in enacting the statutory provision, codified both requirements of the *Aguilar* [v *Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964)] decision. The statute, however, has three requirements, not two. The first is that the affidavit, when based on informant-supplied information, must contain affirmative allegations that the informant spoke with personal knowledge. The second is that the affidavit must set forth facts from which one may conclude that the informant is "credible." Because "credible" modifies the entire phrase "named or unnamed," the statute requires that proof of the informant's credibility must be presented in the affidavit whenever it is based on informant-supplied information. The naming of the informant is a factor to be considered in assessing credibility; however, it is not dispositive. The statute requires in every case that the credibility of the informant be shown, unlike *Aguilar,* which allows a choice between a showing of informant credibility and information reliability. The third is that the information must be shown to be reliable. The Legislature has determined that probable cause is not established until all three requirements have been satisfied.

An informant's credibility must be shown by an assertion of facts tending to support a finding of credibility. While proof of credibility may be accomplished in different ways, facts tending to show credibility must appear on the face of the affidavit. Here, no facts showing Bradway's credibility were set forth in the affidavit. [421 Mich 509-510.]

In this case, the affidavits supporting the search warrants support an inference that Gochis had personal knowledge of Howard Queenan's activities. They did not contain an explicit assertion that Gochis was credible, but we believe that the strong corroborating evidence contained in the affidavits supports not only an inference of information reliability, but also of informant credibility. In any case, we conclude that the affidavits were sufficient even if all references to Gochis' statements are stricken.

A warrant to search a citizen's home may not be issued absent probable cause, *People v Sundling,* 153 Mich App 277, 285; 395 NW2d 308 (1986). Probable cause exists when the facts and circumstances would lead a person of reasonable prudence to believe that the evidence of a crime or contraband sought are in the place to be searched. A magistrate's determination of probable cause should be accorded deference and upheld absent an abuse of discretion. *Id.,* p 286.

Absent Gochis' statements, the affidavits still contain information that Howard Queenan was a Michigan resident who owned four motor vehicles, twelve parcels of real estate and three dwelling houses and a business with two offices. However, he had not filed a personal income tax return in 1980, 1981 or 1982 or an estimated personal income return for 1981, 1982 or 1983. In addition, the business Queenan owned had never filed a Michigan single business tax return.

We conclude that, absent Gochis' statements, the affidavits were sufficient to support the search warrants. In *United States v McManus,* 719 F2d 1395, 1400 (1983), the United States Court of Appeals for the Sixth Circuit noted that " 'the practical considerations of everyday life' on which a reasonably prudent magistrate would act, would dictate that there was probable cause to believe that a well-established businessman with proven, significant sources of income who files no business or personal income taxes for three years is in violation of applicable state income tax laws." See also *People v McManus,* 121 Mich App 380, 382; 328 NW2d 636 (1982), lv den 417 Mich 1100.4 (1983). In this case, a similar analysis applies. Defendants' failure to file any type of tax return for three years suggests that Michigan statutes had been violated. Reversal is not required on this ground.

Because we have concluded that the original search warrants were valid, we also reject defendants' second contention that the seizure of the evidence of controlled substance violations pursuant to the second warrants were the fruit of the poisonous tree and must be suppressed.

Third, defendants contend that their convictions are not supported by sufficient evidence, because the state did not present evidence that they wilfully and knowingly committed sales tax evasion. We disagree.

Evidence is sufficient to sustain a defendant's conviction if, viewed in the light most favorable to the prosecution, it would enable a rational trier of fact to conclude that the essential elements of the crime were proven beyond a reasonable doubt, *People v Petrella,* 424 Mich 221, 268-270; 380 NW2d 11 (1985). Retail sales of marijuana are covered by the General Sales Tax Act, *Greer v*

*Dep't of Treasury,* 145 Mich App 248, 250-251; 377 NW2d 836 (1985). Defendants argue, however, that any marijuana sales they made were wholesale, not retail, and hence they were exempt from sales tax. In this case, the evidence indicated that defendants were engaged in an extensive, ongoing business selling marijuana. The question of intent was for the finder of fact. Defendants' contention lacks merit, because there was evidence presented from which the trier of fact could infer that some of the sales made by defendants were retail sales and that defendants wilfully and knowingly committed sales tax evasion.

Lastly, defendants argue that the sentences imposed upon them constituted an abuse of discretion. We disagree. Sentences of three to five years for sales tax evasion and two years, four months to four years for marijuana possession are not shocking to the judicial conscience. *People v Coles,* 417 Mich 523, 550; 339 NW2d 440 (1983).

Affirmed.