NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0532n.06

Case Nos. 20-1056/1093/1289/1732/2012/2014/2079/21-2784/2964,

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>MICHAEL CHARLES WARD,</td><td>)</td><td rowspan="2"><strong>FILED</strong><br>Dec 23, 2024<br>KELLY L. STEPHENS, Clerk</td></tr>
<tr><td>    Petitioner-Appellant,</td><td>)<br>)</td></tr>
<tr><td>v.</td><td>)<br>)<br>)</td><td>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN</td></tr>
<tr><td>WILLIS CHAPMAN, Warden,</td><td>)<br>)</td><td></td></tr>
<tr><td>    Respondent-Appellee.</td><td>)<br>)</td><td>OPINION</td></tr>
</table>

Before: STRANCH, THAPAR, and MURHPY, Circuit Judges.

THAPAR, Circuit Judge. In 1981, Michael Ward began serving a life sentence for possessing more than 650 grams of cocaine with intent to distribute. For decades, Ward has argued that the Michigan Parole Board unlawfully denied him parole for that conviction. His theory: The Board improperly relied on separate, expunged convictions from 1971.

Ward eventually received parole, but he was imprisoned months later for sexual misconduct involving minors. Ward then sought parole again. But the Parole Board repeatedly denied his requests. In this consolidated appeal of Ward's habeas petitions, he asks for parole and, alternatively, complete release from all conditions of confinement. He claims that the Parole Board retaliated against him for his litigation and improperly relied on the invalid 1971 convictions in denying him parole. But while these appeals were pending, the Board gave Ward parole. Accordingly, we dismiss his request for parole as moot. And we dismiss his claims for retaliatory

denial of parole and reliance on the expunged 1971 convictions because, even if habeas is the proper avenue to pursue these claims, they lack merit.

I.

Ward was convicted in 1971 of possessing marijuana and LSD. *Ward v. Wolfenbarger*, 323 F. Supp. 2d 818, 821 (E.D. Mich. 2004). He served one year and then was released. *Id.* Then, in 1981, Ward was convicted of possessing more than 650 grams of cocaine with intent to distribute. *People v. Ward*, 351 N.W.2d 208, 211 (Mich. Ct. App. 1984) (per curiam). He was sentenced to life in prison without the possibility of parole. *See id.* at 209. But in 1998 Michigan changed its drug-sentencing laws, which made him eligible for parole after seventeen and a half years' imprisonment. *Id.*; *Ward v. Wolfenbarger*, 323 F. Supp. 2d at 822. When Ward became eligible for parole, his application was denied. *Ward v. Howes*, No. 08-13051, 2011 WL 4527786, at *2 (E.D. Mich. Sept. 29, 2011).

In 2003, Ward sought a writ of habeas corpus. He claimed that the Michigan Parole Board had improperly denied him parole for his 1981 conviction by relying on his 1971 marijuana and LSD convictions—which, he argued, were unconstitutional. R. 40, Pg. ID 801 (*Ward I*).[1]

The district court granted Ward's petition. The court held that the 1971 convictions were unconstitutional because Ward wasn't advised of his right to appeal. *Ward v. Wolfenbarger*, 323 F. Supp. 2d at 828–30. But the district court didn't order Ward's release from custody since he was no longer in custody for those convictions. Instead, he was serving his life sentence under the 1981 conviction. Thus, regardless of the 1971 convictions, Ward was "not entitled to be released

---

[1] Because there are two relevant district court dockets, we've designated the one beginning with Ward's 2003 litigation as *Ward I* and the one beginning in 2019 as *Ward II*. They are 2:03-cv-72701-AJT and 2:19-cv-12543-AJT-PTM, respectively.

from custody." R. 40, Pg. ID 802 (*Ward I*). Instead, the district court ordered his 1971 convictions expunged.

Soon after, Ward was released on parole. But eight months later, Ward was arrested again—this time, for "exposing [his] sexual organs to children in a motel room while watching pornography." R. 67-13, Pg. ID 1313 (*Ward I*). Ward, who was 54 years old at the time, was found naked in a motel room watching pornographic movies in the presence of three children. Ward admitted that he went to a motel and asked a 14-year-old girl to have sex with him, but claims he thought she was older. Ward pleaded no-contest to three counts of indecent exposure. His parole was revoked, and he returned to prison.

Ward again became eligible for parole in 2007, but the Michigan Parole Board denied his application. Both before and after the Board denied his application, Ward asked the district court to re-open his earlier habeas petition and to grant him parole. Through multiple rounds of litigation, he asserted that the Board improperly denied him parole by relying on his expunged 1971 convictions. But the district court refused to modify its original award of relief, and the Sixth Circuit affirmed on appeal. *Ward v. Wolfenbarger*, 342 F. App'x 134 (6th Cir. 2009).

A few references to the expunged 1971 convictions remained, so Ward continued to seek their removal from his files. In 2019, the district court modified the original grant of habeas relief and required Michigan to remove all references to the 1971 convictions from Ward's records. But the court didn't order parole for Ward's 1981 conviction. Instead, it instructed Ward to file a separate habeas petition challenging the denial of parole for that conviction.

From there, Ward litigated on two tracks. First, Ward continued to seek the removal of the remaining references to his expunged 1971 convictions. That track ended in 2020, when the district court concluded that Michigan had "essentially complied" with the terms of the modified

writ requiring removal of all references and "there is nothing more that [it] can do for petitioner for his 1971 convictions." R. 443, Pg. ID 7837 (*Ward I*). This denial of habeas relief is one of the claims before us now.

Turning to the second track, Ward filed a separate habeas petition in the district court challenging the Board's denial of his parole application for the 1981 conviction. *Ward v. Chapman*, Nos. 20-1732/2012/2079, slip op. at 2 (6th Cir. May 25, 2021). The district court rejected Ward's claims. *Id.* at 2–3. But this court granted Ward a certificate of appealability on one of his theories of habeas relief: that he was denied parole in retaliation for exercising his constitutional right to challenge his 1971 convictions. *Id.* at 6–8. As the court explained, the viability of a habeas claim for retaliatory denial of parole is an unsettled question in our circuit. *Id.* at 6.

In sum, Ward has filed nine appeals related to his claims for parole or release, all of which are consolidated before us. He asks for two types of relief: (1) parole on the 1981 conviction based on the Board's alleged reliance on the expunged 1971 convictions, and (2) discharge from his 1981 conviction based on alleged retaliatory denial of parole and reliance on the expunged convictions.

There is, however, a critical additional fact. In June 2023, while these appeals were pending, Ward received parole. So, by the time he filed his opening brief to this court, Ward was out of prison.

II.

A.

We address Ward's request for parole first. This claim is moot because Ward has already received the exact relief he requests. An order that Ward be released on parole would make no difference to his legal position because he was given parole in June 2023. *See Witzke v. Brewer*,

849 F.3d 338, 340–41 (6th Cir. 2017). Thus, Ward's request for parole no longer presents a live controversy, meaning that we lack jurisdiction to decide its merits.

## B.

Ward resists this conclusion by arguing that his case falls within two exceptions to mootness. He first argues that the Parole Board's challenged conduct is capable of repetition yet evading review. He also claims that the defendant here—the Parole Board—has voluntarily ceased the challenged conduct during litigation. We address each exception in turn.

## 1.

An action is "capable of repetition yet evading review" when "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (cleaned up).

Neither condition is present here. Ward hasn't shown that the time between denial of parole and expiration of a sentence "is always so short as to evade review." *Id.* at 18. Indeed, Ward is under a life sentence for his 1981 conviction, so he would have sufficient time to challenge the denial of parole if he were reincarcerated in the future. Nor has Ward shown a reasonable likelihood that he would be denied parole again. He'd have to violate the conditions of his release, have his parole revoked, and then become eligible for parole all over again. Indeed, *Spencer* already rejected this argument as too speculative. *See id.* There, the petitioner whose parole was revoked failed to demonstrate "a reasonable likelihood that he will once again be paroled and have that parole revoked." *Id.* The same is true here.

2.

Ward's argument about voluntary cessation fares no better. A case typically isn't moot if the defendant's voluntary decision to stop the challenged conduct results in the plaintiff obtaining relief. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

But the government's decision to stop challenged conduct may moot a case. Michigan's Parole Board is a government entity. Thus, its decision "provides a secure foundation for a dismissal based on mootness so long as the change appears genuine." *Thomas v. City of Memphis*, 996 F.3d 318, 324 (6th Cir. 2021) (cleaned up).

This change appears genuine. For one, the long gap between the initiation of Ward's lawsuits and the Parole Board's grant of parole indicates that the relief was genuine. Indeed, the Board didn't grant Ward parole for *seventeen years* after he began petitioning for parole on his 2005 re-imprisonment. Clearly, the government didn't stop the challenged conduct because Ward sued. By contrast, when we have applied the voluntary cessation exception, the government generally stopped the challenged conduct far sooner. In *Speech First, Inc. v. Schlissel*, for example, the government ceased its conduct "shortly after" the complaint was filed. 939 F.3d 756, 762, 769 (6th Cir. 2019). Or in *A. Philip Randolph Inst. v. Husted*, the government stopped the challenged action "on the same day as the parties' final merits briefs were due before the district court." 838 F.3d 699, 713 (6th Cir. 2016), *rev'd on other grounds*, 584 U.S. 756 (2018). Thus, it does not appear that the government stopped the challenged conduct because Ward sued.

There's also no evidence that the Parole Board will resume its allegedly improper conduct. The Board can only revoke Ward's parole "for cause" as provided by statute. Mich. Comp. Laws § 791.240a(1) (2024). And when a parolee is accused of a violation, Michigan law affords him copious procedural and substantive protections before the state can revoke his parole. *Id.*

§ 791.240a(3)–(10). Michigan also affords judicial review of this decision. *Penn v. Dep't of Corr.*, 298 N.W.2d 756, 757, 759 (Mich. Ct. App. 1980). And even if Ward's parole were revoked, he provides no evidence that the Board would resume its allegedly improper denials. Therefore, the Board is unlikely to restart the challenged conduct after our dismissal for mootness.

Thus, because Ward hasn't shown that the government's actions fit within the voluntary cessation exception, his case remains moot.

C.

There's another twist to consider. When Ward filed his opening brief here, he was on parole. But sometime between filing his opening and reply briefs, Ward was arrested yet again. What for? It's unclear; Ward tells us only that he was "arrested for violating the conditions of his parole." Reply Br. at 5. As of June 2024, he was "in a custodial treatment facility" where he was scheduled to remain for "several more weeks." *Id.* He doesn't tell us anything about the underlying conduct that led to his arrest. *See id.* But he does assert that this new arrest should lead us to conclude that his case isn't moot.

This argument fails. To understand why, consider the nature of the relief Ward has sought: parole. Even if we were to order Ward's release on parole, he would still be subject to the conditions that Michigan imposes on parolees. Thus, the form of relief Ward seeks comes with the possibility that he might be re-arrested. Here, as far as we can tell, that's exactly what happened: Ward was arrested "for violating the conditions of his parole." *Id.* This recent arrest, then, isn't the resumption or continuation of previously challenged conduct. Instead, it's new conduct that the Parole Board could have taken even if we had granted him relief.

For these reasons, Ward's claim for parole from his 1981 conviction is moot.

III.

Ward also requests a complete release from custody on his 1981 conviction: He seeks release from both prison and parole—no strings attached. This request isn't moot because Ward's parole conditions still injure him. If we were to order that Ward be completely released from all custody stemming from his 1981 conviction, then that would make a difference to his legal position: Ward would be free from all parole conditions. So, that's enough to keep Ward's case live.

But on what grounds does Ward seek release? He doesn't challenge the validity of his 1981 conviction, which remains on the books. Instead, he claims that the Board unconstitutionally denied him parole because of (a) his repeated litigation and (b) the Board's allegedly improper reliance on his expunged 1971 convictions. So, he asks us to immediately end his parole with a grant of habeas relief. But both these claims lack merit.

A.

*Retaliation*. Ward claims he is entitled to release because the Board retaliated against him for his repeated litigation, including his demands for parole and his requests that his expunged 1971 convictions be removed from his file. But this claim has no merit.

First, a petition for a writ of habeas corpus appears to be the wrong vehicle for this claim. Ward alleges that the Board retaliated against him for his litigation, which is protected First Amendment activity. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999). So, this looks like a classic First Amendment retaliation claim, which is usually brought under 42 U.S.C. § 1983 for damages or injunctive relief. *See, e.g.*, *Gonzalez v. Trevino*, 602 U.S. 653, 656 (2024) (per curiam). Indeed, in many circuits, prisoners claiming retaliatory denial of parole use § 1983 to bring their claims. *See, e.g.*, *Clark v. State of Ga. Pardons & Paroles Bd.*, 915 F.2d 636, 639 (11th

Cir. 1990), *Ziegler v. Hamm*, 13 F.3d 408, 1993 WL 482966 (10th Cir. 1993) (table). And the Sixth Circuit cases that Ward cites recognizing other types of prisoner retaliation claims also involve § 1983 or its federal counterpart, *Bivens*. Appellant Br. at 24–25 (citing *Hill v. Lappin*, 630 F.3d 468, 473 (6th Cir. 2010); *Brown v. Crowley*, 312 F.3d 782, 791 (6th Cir. 2002)).

Even if a petition for habeas were the proper way to bring the claim, Ward can't show retaliation. To make out such a claim, Ward would need to show that he "engaged in protected conduct," the Board took "an adverse action" against him, and there was a "causal connection between" the protected conduct and the adverse action. *Thaddeus-X*, 175 F.3d at 394. Here, Ward's protected conduct would be his initial habeas petition and litigation to enforce the writ. And the adverse action would be denial of parole.

But Ward doesn't point to any evidence that his litigation caused the Board to deny him parole. Instead, Ward relies on circumstantial evidence to support his retaliation argument. He observes that it's "unlikely that state officials would simply admit that they acted out of a retaliatory or other improper motive or would make a record of such a motive." Appellant Br. at 37. And he stresses the record proof that he served over 18 years in prison after his re-incarceration when the Parole Board at the time recommended 18 months.

The record, however, also establishes that the Board had reasons for denying Ward parole. Ward was serving a life sentence for his 1981 conviction for possessing more than 650 grams of cocaine, which, at the time, was worth roughly $2.5 million. *People v. Ward*, 351 N.W.2d at 213. When given parole twenty years ago, Ward violated it by engaging in sexual misconduct with two boys and a fourteen-year-old girl. And Ward's record contained four non-expunged drug offenses, including two for distribution. Indeed, the Parole Board member who denied Ward parole in 2017 swore that the denial stemmed from Ward's "history of parole failure," including his "predatory

sexual behavior involving teenaged children," and misconduct in prison, including possessing a weapon, disobeying a direct order, and smuggling.  R. 24-3, Pg. ID 405–06 (*Ward II*).

All told, the Board had numerous valid grounds for denying Ward parole—and testimony from a Board member confirms as much.  So, Ward's circumstantial evidence fails to support the inference that the Board retaliated against him for challenging his earlier denials of parole.

B.

*Improper Reliance.*  Ward also demands release from all forms of custody because the Board allegedly relied on his expunged 1971 convictions in denying him parole.

But this claim similarly lacks substantiation.  The Board member who reviewed Ward's file swore that Ward's criminal history was "not a significant factor" in the decision to deny parole.  *Id.* at 406.  While the Board member "was aware that Mr. Ward had two expunged convictions," he "did not consider them in making [his] recommendation" "because they were expunged."  *Id.* In the end, the Parole Board did not rely on minor, expunged offenses from the early 1970s.[2] Rather, it relied on Ward's long record of misconduct, from before his 1981 conviction up through his conduct on parole and in prison.

C.

Finally, Ward argues for a prophylactic rule that would effectively expunge his 1981 conviction:  He wants us to order that he can no longer serve time for it or be held on parole under that conviction.  Doing so, he says, would provide "a deterrent" against the Parole Board's alleged

---

[2] The Parole Board likely could've considered the conduct underlying Ward's 1971 convictions.  Michigan law explicitly allows the Board to "consider" "[p]rior arrests not resulting in conviction."  Mich. Comp. Laws Ann. § 791.235(3)(b).  The Board just can't "base a determination . . . solely on" that conduct.  *Id.* § 791.235(3).  So, the Board could've considered Ward's 1971 convictions if it wanted—though the record substantiates the conclusion that the Board ignored them.

unconstitutional denial of parole. Appellant Br. at 20. As authority for his argument, Ward relies on *Mapp v. Ohio*, which incorporated the Fourth Amendment's exclusionary rule against the states, and *Miranda v. Arizona*, which bars prosecutors from using certain statements made by a suspect under custodial interrogation unless the suspect received warnings. Appellant Br. at 20, 40 (citing *Mapp*, 367 U.S. 643 (1961); *Miranda*, 384 U.S. 436 (1966)).

We don't have the authority to create prophylactic rules not grounded in the Constitution. Even if we did, there would be no need to do so here. Ward isn't being confined unlawfully: He's on parole pursuant to a valid life sentence. And crucially, even if Ward were correct that the Michigan Parole Board previously denied him parole because of either (a) retaliation for constitutionally protected conduct or (b) improper reliance on the expunged 1971 convictions, that wouldn't somehow transform his underlying 1981 conviction from lawful to unlawful. An underlying court-imposed sentence remains valid regardless of a parole board's reasoning for denying parole. Indeed, under Ward's theory, any criminal could obtain release from custody, including freedom from all parole conditions, whenever a parole board denies parole for a forbidden or arbitrary reason. No legal authority supports that claim.

\* \* \*

In short, we dismiss Ward's claims for parole as moot and deny his claims for release from parole.